THE PEOPLE, ex rel. MARY J. FARRAR et al., Appellants, *v.* MICHAEL O'KEEFE, Registrar, etc., Respondent..

The act of 1880 in relation to unpaid taxes and assessments in the city of Brooklyn (Chap. 572, Laws of 1880) provides for two classes: first, where the claims and demands against any parcel of land for taxes and assessments exceed the value of the land as valued on˙ the last tax-roll ; second, where the aggregate is less than such assessed value.

The provision as to the second class authorizes the payment of the original amount of the taxes and assessments themselves without interest, but if the credit proffered by the act is taken, then with interest at six per cent from the date of the passage of the act.

Where, therefore, the relators tendered to the defendant, as registrar of arrears, and the latter refused the amount of the taxes and assessments on their lands levied prior to January 1, 1878, with interest at the rate prescribed by the act from the date of its passage. *Held*, that a peremptory *mandamus* was proper requiring defendant to accept the tender in payment of the arrears.

(Argued November 16, 1882; decided November 28, 1882.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made December 13,

420    THE PEOPLE ex rel. FARRAR et al. *v.* O'KEEFE. [Nov.,

Opinion of the Court, per DANFORTH, J.

1882, which affirmed an order of Special Term, the nature of which as well as the material facts are stated in the opinion.

*Joshua M. Van Cott* for appellants.    It makes no difference whether the interest is in express terms abated by the act, so long as it expresses an amount which will pay the arrears in full. (*Tilloston* v. *Preston,* 3 Johns. 229 ; *Johnston* v. *Brannan,* 5 id. 268 ; *Consequa* v. *Fanning,* 3 Johns. Ch. 587 ; *Stevens* v. *Barringer,* 13 Wend. 639 ; *Jacob* v. *Emmett,* 11 Paige, 142 ; *Gillespie* v. *Mayor,* 3 Edw. 512.)    The effect of compounding the tax, as of a later date than the original levy, is the same as if the tax had been levied at such later date. (*Trowbridge* v. *Horan,* 78 N. Y. 438 ; *Matter of St. Joseph's Asylum,* 69 id. 353 ; *Matter of Miller,* 24 Hun, 637.)

*John A. Taylor* for respondent.    It will not be presumed that the legislature intended to throw away a large amount of interest due upon unpaid taxes and assessments on solvent property. (Laws of 1876, chap. 324, p. 311, § 4 ; Laws of 1877, chap. 292, p. 315 ; Laws of 1877, chap. 435, p. 492 ; Laws of 1878, chap. 346, p. 433, §§ 3, 4.)    Such a wholesale confiscation of the assets of the city, the wiping out of interest accrued prior to 1880 on taxes and assessments levied prior to 1878, should not be spelled out of an act in the absence of express provision. (*People, ex rel. v. Bd. of Commissioners,* 76 N. Y. 64.)

DANFORTH, J.    The Special Term denied an application by the relators for a *mandamus* requiring the registrar of the city of Brooklyn to receive money tendered in payment of arrears of taxes, water rates and assessments against their real estate.    The facts on which the application stood were not controverted.    The relators tendered the amount of taxes and assessments with interest at six per cent from June 21, 1880, and the question presented to the court below, and upon this appeal, turns upon the true construction of an act of the legislature, passed June 21, 1880 (Laws of 1880, chap. 572), entitled "An act in relation to unpaid taxes and assessments in

1882.]   The People ex rel. Farrar et al. v. O'Keefe.   421

Opinion of the Court, per Danforth, J.

the city of Brooklyn." Its scope, as is apparent, embraces
all impositions of that character and description. It consists
of two sections, and, defines two classes of assessments, pre-
scribing for each a peculiar and distinct limitation in favor of
the tax payer.

By the first section where the aggregate of all claims and
demands against any parcel of land for taxes and assessment,
and sales therefor, exceeds the value of such land as the same
is valued upon the tax-roll, then last confirmed by the board
of supervisors of Kings county, such aggregate is reduced to
that assessed value, and if this is paid before October 1, 1880,
the taxes, etc., are to be discharged of record, and cease to be
liens upon the land; or under the provisions of the second
section the person interested may pay one-fifth of the reduced
amount at that time without interest, and the balance in four
equal annual payments with interest at six per cent from
October 1, 1880.

So far there is no contention between the parties; nor are
the lands owned by the relators of the class burdened beyond
their assessed valuation. It is contended that they belong to
another class named in the last clause of the second section,
which is as follows : " This section as to the terms of pay-
ment shall also apply to all taxes, water rates and assessments
levied prior to January 1, 1878, and not included in section one
of this act; the original amount thereof may be paid with in-
terest at the rate of six per centum per annum from the date of
the passage of this act."

The arrangement of these words might be improved, but
we think the meaning is obvious. The general description
and purview of the act embraced all unpaid taxes. They are
then resolved into two species; the first, when they overload
the land, and render it, as the respondent puts it, insolvent;
the second, all others, that is whose aggregate is less than the
assessed value of the land. The respondent, conceding such
division, claims that only the terms of payment apply to the
last class, and that interest should be added to the time of the
passage of the act, according to the rate theretofore allowed, and

thereafter on the whole amount of principal and interest. And so the question comes to this : What is the " original amount " of a tax? Plainly the tax itself — the share of the public burden, spread upon the tax-list. After that, upon default in payment, come interest as a penalty and fees ; interest in some cases at fifteen per cent — together constituting the aggregate of " claims and demands " mentioned in the first section. A total made up of elements of which the original tax is one part indeed, but in taxes of long standing, a small part.

A judgment upon a note might include the amount of the note, and interest from maturity, and costs, but no one would suppose that after an agreement to discharge the judgment on payment of the original debt or note, either interest or costs could be exacted.

It is so with the case before us. The language of the legislature is very plain ; it describes a different intent in dealing with the two classes, and we need not look outside the law in aid of its construction. We find in effect two classes of tax payers referred to in the act ; one who may relieve their land of claims and demands made up of taxes, interest, fees and sales, by paying an amount equal to its assessed value, or that amount with interest on it from October 1, 1880, the other who need only pay the " original tax," but if he takes the credit proffered by the act, must pay it with interest from the date of the passage of the act.

The relators are of the second class. They sought to comply with the provisions of the law, but were prevented by the act of the respondent. They were entitled to the relief sought.

The orders of the Special and General Terms should therefore be reversed, with costs, and a writ of *mandamus* issue according to the prayer of the relators.

All concur, except TRACY, J., absent.

Ordered accordingly.