LUCY MARIA TERREL, Respondent, *v.* NANCY B. WHEELER et al., Appellants.

The legislature has power to enact laws to cure defects in, and to confirm taxes, where the law has not been strictly pursued in their imposition, in cases where the taxes were not invalid because of want of jurisdiction to impose them, or where no constitutional right of the taxpayer had been violated.

The act of 1882, therefore (Chap. 363, Laws of 1882), confirming taxes theretofore imposed in the city of Brooklyn, cured any defects and irregularities in such taxes, and no one of them may be assailed on account of any irregularity.

It was the purpose of the Arrearage Act of 1883 (Chap. 114, Laws of 1883), to bring within its operation and the jurisdiction of the board of assessors of the city of Brooklyn all the taxes, assessments and water-rates formally imposed, unpaid and in arrears, whether valid or, by reason of irregularity or want of jurisdiction in their imposition, invalid.

The legislature had the right to devolve that jurisdiction upon said board, and also to authorize it, as was done by the act, to readjust and reapportion the taxes upon equitable and just principles, after due notice to the property owner and an opportunity to be heard. The taxing power is not delegated to the board, but simply the power to adjust the amounts of taxes, and these the legislature impose as taxes.

The legislature has power to provide that a purchaser at a tax sale shall take an absolute title.

The provisions of said act of 1883 as to notice are adequate and sufficient. Reported below, 49 ·Hun, 262.

(Argued June 10, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made June 25, 1888, which overruled exceptions and denied a motion for a new trial and ordered that plaintiff have judgment upon a verdict directed in her favor.

This was an action of ejectment and to recover damages for an alleged wrongful withholding of real estate in the city of Brooklyn.    Plaintiff claimed title through a tax sale under the act (Chap. 114, Laws of 1883) known as the Arrearage Act, which act and the sale under it defendants claim to be void.

*William C. De Witt* for appellants.    Defendant's lot cannot be constitutionally sold, because the arrears law directs the sale in fee simple absolute of the entire parcel to the highest bidder without any adequate, reasonable provision for a redemption from the sale.    (*Fisher* v. *N. Y. C. & H. R. R. R. Co.,* 46 N. Y. 644, 657; *Mix* v. *N. Y. C. & H. R. R. R. Co.,* 47 id. 143; *Jackson* v. *Esty,* 7 Wend. 148, 150.)    Chapter 114 of the Laws of 1883 is unconstitutional and void.    (*Stuart* v. *Palmer,* 74 N. Y. 183; *People ex rel.* v. *Wemple,* 117 id. 77; *People ex rel.* v. *City of Brooklyn,* 71 id. 495.)    The arrears law is unconstitutional because it is a legislative invasion of the judicial power.    (*Guilford* v. *C. Co.,* 13 N. Y. 147; *Kilburn* v. *Thompson,* 103 U. S. 168, 190–193.)    To remit city, county or state taxes properly imposed is within the province of the legislature alone.    It is a power which cannot be delegated to the board of assessors.    (*State* v. *H. C. A. Comrs.,* 37 N. J. 12; Const. art. 1, § 9; *Brewer* v. *Brewer,* 62 Me. 62; *Parker* v. *Milford,* 59 id. 315, 318; *Weismer* v. *Douglass,* 64 N. Y. 91.)    At every tax sale the registrar owes a duty to the owner of the lot, as well as to the city.    (*King* v. *Platt,* 37 N. Y. 160; *Powell* v. *Tuttle,* 3 Comst. 402; *Odell* v. *Twomey,* 8

Wkly. Dig. 166 ; *A. S. S. Bank* v. *Cassidy*, 5 id. 84.) The certificate of sale is not under seal and is, therefore, void by the statute. (*Townshend* v. *Williams*, 18 J. & S. 398 ; *Franklin* v. *Pearsall*, 21 id. 271.) The statute required the purchaser to give to the owner notice of sale. (Laws of 1883, chap. 114, §§ 4, 5.) The tax deed is not evidence that the defendant was not in arrear. (*Excise* v. *Merchant*, 103 N. Y. 148 ; *Litchfield* v. *Vernon*, 41 id. 123–135, 136 ; *Bowns* v. *May*, 120 id. 357.) The tax deed cannot be evidence that notice was given to the defendant under the fifth section of the act. (*Varick* v. *Tallman*, 2 Barb. 119 ; *Striker* v. *Kelly*, 2 Den. 335.)

*John J. Townsend* for appellants. The taxing power for general purposes may not be delegated, except where the Constitution, by express terms, or by necessary implication, declares that it may or shall be delegated. The Arrears Act (Chap. 114, Laws of 1883) is void. (2 Locke on Civ. Gov. § 141 ; 58 Me. 591 ; *Thomas* v. *Leland*, 29 Wend. 65 ; Cooley on Tax. 48, 49, chap. 3 ; *People* v. *Suprs.*, 52 N. Y. 556, 567 ; *Houghton* v. *Austin*, 47 Cal. 646.)

*Almet F. Jenks* for respondent. Chapter 114 of the Laws of 1883 is constitutional. (Sedg. on Stat. 43 ; *People* v. *Mayor, etc.*, 4 N. Y. 419, 425 ; *People* v. *H. Ins. Co.*, 92 id. 328–347 ; *Genet* v. *City of Brooklyn*, 99 id. 296–306 ; *People* v. *Turner*, 117 id. 227–236 ; Cooley on Tax. [2d ed.] 62, 63, 220, 223, 226, 293, 482, 747 ; *In re Zborowski*, 68 N. Y. 88, 96 ; *Town of Guilford* v. *Bd. of Suprs.*, 13 id. 143 ; *Spencer* v. *Merchant*, 100 id. 585, 587 ; 125 U. S. 345 ; *In re Van Antwerp*, 56 N. Y. 261 ; *Litchfield* v. *Vernon*, 41 id. 123 ; *Gordon* v. *Carnes*, 47 id. 612 ; *Howell* v. *Buffalo*, 37 id. 274 ; *Clementi* v. *Jackson*, 92 id. 591 ; *Ensign* v. *Barse*, 107 id. 329 ; *Williams* v. *Albany*, 122 U. S. 154 ; *People* v. *Lawrence*, 36 Barb. 177, 194 ; *Lorillard* v. *Monroe*, 11 N. Y. 392 ; *In re E. C. Bank*, 18 id. 200, 215, 216 ; *Hiller* v. *B. & M. R. R. Co.*, 70 id. 223–227 ; *In re De Peyster*, 80 id. 565–571, 572 ; *In re Lowden*, 89 id. 548–555 ; *Rockwell* v. *Nearing*, 35 id. 302, 314 ; *Tracey* v. *Corse*,

58 N. Y. 143–151; *In re Village of Middletown*, 82 id. 201; *In re U. E. R. Co.*, 112 id. 61, 75, 76; *In re Lamb*, 51 Hun, 633.) The record in this case does not show that any of the arrears charged against this property were composed in whole or in part of invalid taxes or assessments. (*People* v. *Turner*, 117 N. Y. 227–231; *City of Brooklyn* v. *Copeland*, 106 id. 496; *Day* v. *Town of New Lots*, 107 id. 148.) The question is whether the lands were affected by arrears. The act was a public act of which knowledge is presumed. (*People* v. *Turner*, 117 N. Y. 227–238.) The arrearages, whether of valid or invalid taxes, constituted a cloud upon the title, in that an action would lie to remove them, and, therefore, they affected the land. (Laws of 1884, chap. 334, § 33; Laws of 1873, chap. 863, § 10; *People* v. *Turner*, 117 N. Y. 227–233; Cooley on Tax. 780; *Hanlon* v. *Suprs.*, 57 Barb. 383: *Scott* v. *Onderdonk*, 14 N. Y. 9; *Hatch* v. *Buffalo*, 38 id. 276; *S. Bank* v. *Board of Suprs.*, 25 id. 314; *Springport* v. *Bank, etc.*, 75 id. 397–403; *Rumsey* v. *Buffalo*, 97 id. 114–119.) It was within the power of the legislature to prescribe that the amount determined by the board of assessors should be a valid and binding tax. It was not a delegation to the board of assessors to lay the tax, because the tax was laid by the legislature itself, at section 2 of the act. (*In re Van Antwerp*, 56 N. Y. 261; Cooley on Tax. 345, 482; *Langley* v. *Chapin*, 134 Mass. 82; Black on Tax Titles, 231; Blackwell on Tax Titles, 504; Burroughs on Tax. 122; Destey on Tax. 150; Hilliard on Tax. chap. 15.) The statute made the deed presumptive evidence. This carried the conclusion that jurisdiction had been acquired, and all proceedings necessary to give a title under the statute had been duly taken. (*Johnson* v. *Elwood*, 53 N. Y. 435.) .

Earl, J. After our decision in the case of *Brevoort* v. *City of Brooklyn* (89 N. Y. 128), holding that certain tax impositions were void on account of defective verifications of. the assessment-rolls by the assessors, the legislature passed the act (Chap. 363, Laws of 1882) confirming the taxes there-

tofore imposed, and thereafter no tax in Kings county assessed before the passage of that act could be assailed on account of any irregularity. The taxes were not invalid for want of jurisdiction to impose them, nor because any constitutional rights of the tax-payer had been disregarded or violated, but they were invalid because the law had not been strictly pursued in their imposition, and hence there was legislative competency to cure the defects and to confirm them. (*Clementi* v. *Jackson*, 92 N. Y. 591; *Ensign* v. *Barse*, 107 id. 329; *Williams* v. *City of Albany*, 122 U. S. 154.)

But that act did not entirely relieve the city of Brooklyn from its difficulties. There was a large amount of taxes, assessments and water-rates unpaid, and they were so excessive that it was found difficult, if not absolutely impossible to collect them. They were very burdensome and oppressive to the tax-payers, and hence legislative relief was granted to both the city and the tax-payers by the act (Chap. 114, Laws of 1883) commonly called the Arrearage Act. The difficulties which confronted both the city and the tax-payers are set forth in the preamble of the act as follows: " Arrears of unpaid taxes, assessments and water-rates in the city of Brooklyn have accumulated to an amount exceeding ten millions of dollars, and in some instances said arrears exceed in amount the assessed value of the land affected thereby, and the validity of some of such unpaid taxes, assessments and water rates has been or may be called in question by reason of some irregularity, omission or defect in the proceedings instituting, levying or imposing the same, and the city of Brooklyn has issued and sold its tax certificates to a large amount on account of the arrears of unpaid taxes, and has issued and sold its bonds for the money paid for the improvements for which the assessments so in arrears were imposed, and the said improvements have been completed, and the property assessed therefor has been benefited thereby."

The first section of the act provides that the board of assessors of the city of Brooklyn shall have power and jurisdiction and are directed and required in all cases " where any

tax, assessment or water-rate levied or imposed, or attempted to be levied or imposed ". on any land in the city prior to the 1st day of July, 1882, remains unpaid and in arrears, to examine into and fix, adjust and determine as to each parcel of land how much of the arrearages ought, in the way of tax, assessment and water-rate, in fairness and justice now presently to be laid, assessed and charged against and actually collected from the land by reason of any and all the matters and things covered or attempted or intended to be covered or done in the laying and assessing such taxes, assessments or water-rates so in arrears; and the board in dealing with the arrearages as matters of fact, according to their judgment of what shall be fair and just, shall treat the same without any regard to any supposed want of jurisdiction, irregularity or defect in any of the proceedings had for the levying, imposing or confirming any of the taxes, assessments or water-rates so in arrears; that the board, shall, within thirty days after the passage of the act, publish in the corporation newspapers a general notice requiring the owner or owners of all land in the city affected by any arrearages of taxes, assessments or water-rates, and all other persons having any interest in or lien upon such lands, to present in writing, to the board within ninety days after the passage of the act, their objections to any tax, assessment or water-rate so in arrears, and any reason why any part of such arrearages should be reduced or remitted ; that such notice shall be signed by the president of the board, and shall be published at least three times each week for four weeks next succeeding the first publication thereof ; that it shall be the duty of such owners or persons having any interest in or lien on lands affected by the arrearages and making such objections, to present, in writing, to the board, within the time specified in the notice, a brief and concise statement of such objections to the arrearages, and their reasons why the same or any part thereof should be reduced or remitted, and to serve a duplicate copy of such statement on the corporation counsel within the time specified ; that any person who shall file and serve such statement within the time specified, shall be heard

before the board in person, or by counsel, if he demand such hearing; that the board may call before them and examine witnesses under oath in relation to all matters concerning taxes, assessments or water-rates; that any member of the board may administer oaths or take the affidavits or depositions of any person to be used before the board, and the board may appoint committees of their number to examine premises in such cases as they may think an examination useful for the determination of their value.

It was the clear purpose of this section to bring within the operation of the act and the jurisdiction of the board of assessors all the taxes, assessments and water-rates which were unpaid and in arrears, whether they were valid or, by reason of some irregularity or even want of jurisdiction in their imposition, invalid. The words "attempted to be levied or imposed" clearly have reference to taxes, assessments and water-rates which had been levied or imposed, but which, nevertheless, were illegal and invalid.

Could the legislature devolve upon the board of assessors the jurisdiction specified in the section? Why not? It was a local board — one of the departments of the city government charged by the city charter with the general duty of making assessments for the purpose of taxation. Its members represented the city and the people of the locality, and it was the appropriate tribunal for the exercise of the jurisdiction conferred. The jurisdiction was not conferred upon the assessors then in office, as individuals, but it was conferred upon them as members of the board, to be exercised by them only so long as they should be members thereof, and the jurisdiction remained in the board whoever its members might at any time be. We can, therefore, see no possible objection to the tribunal or the officials who were to exercise the jurisdiction conferred.

The board, under the act, could not impose any new taxes (using the word "taxes" as also embracing assessments and water-rates), nor could they increase the taxes. The only change they could make in the taxes was to decrease them. The legislature, by the two acts mentioned, so far as it was

competent to do so, cured any defects and irregularities in the imposition of the taxes, and, by the latter act simply provided for a readjustment and reapportionment of the taxes upon equitable and just principles, and this it could do through any appropriate agency it saw fit to adopt. (*In re Zborowski,* 68 N. Y. 88; *Genet* v. *City of Brooklyn,* 99 id. 296.)

It was not necessary for the legislature to fix the amount of the impositions. Such legislation is not unusual in principle. All the expenses of municipal corporations are determined by local boards of officers, and are then imposed as taxes under general laws; and the same is true as to the expenses of local improvements. · In the city of New York the legislature allowed application to be made to the courts by aggrieved property owners for the reduction or revision of assessments; and by the act, chapter 550 of the Laws of 1880, it appointed ·a special board of commissioners to vacate, modify and revise assessments in the city of New York, and while the act has frequently been under consideration in the courts its constitutionality has never been doubted.

Ample provision is made in the act of 1883 for notice and hearing, and the constitutional rights of property owners are thus as effectually guarded as they well could be under any practical system of taxation. (*Stuart* v. *Palmer,* 74 N. Y. 183.)

The board of assessors were to take these taxes and investigate them, and all the facts connected with their imposition, and, after hearing the persons interested, determine how much of them in fairness and justice should rest upon each parcel of land, and the amounts thus determined were to rest upon the parcels of land as taxes. Nothing could be fairer or more just, and it is difficult to see how any just complaint could be made to such a system.

The taxing power is not delegated to the board of assessors. They are simply to adjust the amounts of the taxes upon the several parcels of land, and then the amounts thus determined are imposed as taxes by the legislature, and this certainly is not an unusual proceeding, but is more or less incident to all systems of taxation.

It is said that the notice required to be given is inadequate, because it is only a notice to persons " affected by any arrears of taxes, assessments or water-rates," and, therefore, is no notice to any person of invalid taxes " attempted to be levied or imposed." But the legislature was dealing with this whole body of taxes, some of which were valid and some invalid. Whether valid or invalid, they were all formally imposed and were in form tax impositions, and the notice was plainly intended to cover both kinds, and would undoubtedly be so understood by everyone. The hearing before the board was intended to be as to both kinds, and the notice was intended to reach and must be supposed adequate to reach all persons affected by both kinds.

The act provides (§ 4) for a sale of the lands for the taxes finally imposed thereon, under the act, by the registrar of arrears, and that he shall give a deed thereof in fee simple absolute to the purchaser on proof by him of service of notice of the sale upon the owner or mortgagee of the land, after the expiration of one year from the service of such notice, of which said deed shall be presumptive evidence. It is objected that the legislature could not thus authorize a deed in fee simple absolute. It was a matter of legislative discretion whether the purchaser at the tax sale should have an absolute title or a less estate. It is the general rule in such cases to give the purchaser, after failure to redeem within a time allowed, an absolute title. Such is and always has been the rule in this state as to tax titles upon sales for default in the payment of the usual taxes imposed for the support of the state and local governments.

Several objections are made to the procedure under the act. We have carefully examined and considered them all, and are satisfied that they are clearly unfounded and need no particular attention here.

Our conclusion is that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.