LITCHFIELD et al. v. CITY OF BROOKLYN (two cases).

(City Court of Brooklyn, Special Term. July 29, 1895.)

1. ABATEMENT OF ACTIONS—ANOTHER ACTION PENDING—STATE AND FEDERAL COURTS.
   The pendency of an action in a federal court is not a bar to a subsequent action in a state court for the same cause between the same parties.

2. INJUNCTION—RESTRAINING THREATENED TAX SALE.
   An injunction may be granted against a threatened tax sale on the ground that the tax is illegal.

3. TAXATION—PENALTIES—ARREARAGES.
   The word "arrearages," in Laws 1883, c. 114, providing for the collection of the arrearages of taxes, water rents, etc., in the city of Brooklyn, includes, besides the taxes, water rates, etc., all penalties for default in paying the same imposed by previous statutes.

4. SAME—ARREARS OF WATER RATES.
   Laws 1883, c. 114, relating to arrears of taxes, assessments, and water rates in the city of Brooklyn, which authorizes the assessors in all cases "where any tax, assessment, or water rate levied or imposed, or attempted to be levied or imposed, on any land in the city prior to the 1st day of July, 1882, remains unpaid and in arrears, to examine into and tax, adjust, and determine, as to each parcel of land," how much of the arrearages ought in fairness and justice to be assessed and collected, authorizes the board to consider water rates or assessments which were held void on constitutional grounds.

5. SAME—ASSESSMENT—PROCEDURE.
   A statutory requirement that assessment rolls should contain two columns, one headed "Reductions and Cancellations," and another headed "Arrears," may be complied with by filling in the headings after the taxes are confirmed.

6. SAME—ASSESSING SEVERAL PARCELS AS ONE.
   Laws 1883, c. 114, providing that the assessment of taxes theretofore attempted to be levied in the city of Brooklyn, and held invalid, sufficiently describes the premises by stating the block and lot numbers, and that the assessors may apportion certificates and cause the assessment map to be altered so as to show such subdivisions and give a new number to each of the same, requires each certificate to contain a single number, and a certificate which includes several lots is invalid.

Action by Edward H. Litchfield and others against the city of Brooklyn, and by Edward H. Litchfield against the city of Brooklyn. Complaints dismissed, except as to two items.

Wm. C. De Witt, for plaintiffs.

Albert G. McDonald, Corp. Counsel (Henry Younge, Asst. Corp. Counsel, of counsel), for defendant.

CLEMENT, C. J. 1. It is claimed that these actions cannot be maintained, for the reason that actions seeking the same relief were commenced on April 10, 1894, and are still pending between the same parties in the United States circuit court for the Eastern district of New York, which district includes the city of Brooklyn, while the present cases were not begun until the following September. I am inclined to hold, on the authorities, that the plea in abatement is not well taken. Bank v. Bonney, 101 N. Y. 173, 4 N. E. 332; Mitchell v. Bunch, 2 Paige, 606, 620; Sharon v. Hill, 22 Fed. 28; Manufacturing Co. v. Scutt, 22 Fed. 710; Gilmour v. Ewing, 50 Fed. 656; Gordon v. Gilfoil, 99 U. S. 168.

2. It is also contended that actions in equity to enjoin the collection of taxes cannot be successfully brought, and that the remedy of plaintiffs is to pay the taxes, and then, if illegal, to sue for their recovery. I am satisfied that the conclusion I arrived at on the motion for the preliminary injunction (31 N. Y. Supp. 151) is the correct one, and adhere to the opinion I filed on the decision of that motion.

3. The learned counsel for the plaintiffs contend that chapter 114 of the Laws of 1883 is unconstitutional and void on several grounds —First, because it does not provide for an adequate notice to the parties affected thereby; second, because it does not afford a fair hearing to the owners of property; third, because it provides for taking and selling private property in fee simple; fourth, because it deputes to the assessors power, in their discretion, to determine how much of a large public debt shall be imposed upon private propety and how much shall be assumed by the city of Brooklyn; fifth, because it provides that the acts of the assessors shall not be reviewable by the courts. All these questions have been considered and decided by the court of appeals adversely to the contention of plaintiffs, and I am foreclosed from the consideration of either question. Terrel v. Wheeler, 123 N. Y. 76, 25 N. E. 329; Lamb v. Connolly, 122 N. Y. 531, 25 N. E. 1042.

4. The counsel for the plaintiffs also maintain—First, that, under chapter 114 of the Laws of 1883, no power was given to the board of assessors to include any interest at all upon the taxes, assessments, or water rates in arrears, and to be settled under that act; second, conceding that they did have such power, yet that they had no right to add interest after July 1, 1882; third, that the assessors were prohibited, in considering the question of interest on arrearages, from proceeding beyond the date of the passage of the act, March 16, 1883. Prior to 1883, several statutes had been passed adding penalties to taxes, assessments, and water rates, in case own-

ers of real property affected thereby failed to pay the same within 30 days after confirmation.   I am asked now to hold that the word "arrearages," in the act in question, only included the principal of taxes, assessments, and water rates, and not the statutory defaults for nonpayment.   The annual taxes had been confirmed by chapter 363, Laws 1882, with interest, and therefore such interest formed part of the tax.    Judge Cooley states (Cooley, Tax'n, 2d Ed., p. 457):

"Penalties are most often provided under state laws for neglect to pay the taxes in due season, and they consist, then, in an addition of some definite per cent. to the tax."

I am of opinion that the word "arrearages" included taxes, assessments, and water rates, and all defaults.   The legislature had the power to impose the defaults, and, for the purposes of the act, they were added to and formed part of the tax, assessment, or water rate, or rather formed a part of the arrearages of taxes, assessments, or water rates.   If, as it seems, the assessors had the power to consider the statutory defaults as part of the arrearages, I see nothing in the act which limited the time of the running of the defaults to July 1, 1882.   The act recites that the arrears of taxes, assessments, and water rates exceed $10,000,000, and the legislature did not assume that the board of assessors could pass upon all cases forthwith after its passage.   A long period of time must necessarily elapse before they could finish their work.   The assessors did not act on the property of Mr. Litchfield until nearly two years after the act took effect, and the statutory defaults were all the time running. I find no provision which prohibited the assessors from considering interest or defaults after March 16, 1883, the date of the passage of the arrears act, and conclude that they had a right so to do.

5. In considering the arrears on several parcels involved in these actions, the assessors took into account water rates.   The parcels of land were vacant during the years when the rates were attempted to be levied.   In Remsen v. Wheeler, 105 N. Y. 573, 12 N. E. 564, the court of appeals decided that all water rates assessed against vacant lots in Brooklyn were void, for the reason that the act (Laws 1859, c. 396), under which they were authorized, did not provide for a notice of hearing to property owners.   It seems, therefore, clear that the water rates on the land in suit were, on July 1, 1882, void, and were not the subject of confirmation, except by a new levy and with a notice of hearing, as was done in the case of the Atlantic Avenue assessment.   Spencer v. Merchant, 100 N. Y. 585, 3 N. E. 682; Id., 125 U. S. 345, 8 Sup. Ct. 921.   The question, therefore, to be decided is whether or not the board of assessors were given jurisdiction by the act of 1883 to consider water rates or assessments which were void on constitutional grounds.   I am inclined to hold that water rates were brought within their jurisdiction by the act in question.   The case of Spencer v. Merchant, supra, seems to me to be an authority in point.   By chapter 689 of the Laws of 1881, the board of supervisors were authorized to equitably apportion a certain fixed amount on the parcels of land whose owners had not paid their assessments for the regulating and grading of Atlantic avenue.   Such fixed amount was the sum total of the un-

paid assessments which had been canceled as void on constitutional grounds. The supervisors, under the act, were to apportion the amount on the several parcels of land, and were to give 10 days' notice of hearing as to the apportionment. The new assessments were levied, and were the same as the old, with interest added, and were upheld as valid by the court of appeals and the supreme court of the United States.

On a careful reading of the opinion of Judge Earl, in the case of Terrel v. Wheeler, 123 N. Y. 76, 25 N. E. 329, I think he held that the notice to property owners under the act of 1883 was broad enough to apply to taxes invalid on constitutional grounds. He said (page 82, 123 N. Y., and page 329, 25 N. E.):

"It was the clear purpose of this section to bring within the operation of the act and the jurisdiction of the board of assessors all the taxes, assessments, and water rates which were unpaid and in arrears, whether they were valid, or, by reason of some irregularity, or even want of jurisdiction in their imposition, invalid. The words, 'attempted to be levied or imposed,' clearly have reference to taxes, assessments, or water rates which had been levied or imposed, but which, nevertheless, were illegal and invalid."

Page 84, 123 N. Y., and page 329, 25 N. E.:

"It is said that the notice required to be given is inadequate, because it is only a notice to persons 'affected by any arrears of taxes, assessments, or water rates,' and therefore is no notice to any person of invalid taxes 'attempted to be levied or imposed.' But the legislature was dealing with this whole body of taxes, some of which were valid and some invalid. Whether valid or invalid, they were all formally imposed, and were, in form, tax impositions, and the notice was plainly intended to cover both kinds, and would undoubtedly be so understood by every one. The hearing before the board was intended to be as to both kinds, and the notice was intended to reach, and must be supposed adequate to reach, all persons affected by both kinds."

All water rates in this city, whether attempted to be levied on improved or vacant property, prior to 1888, were void. It was held by the court of appeals in Re Union College, 129 N. Y. 308, 29 N. E. 460, following the decision of Remsen v. Wheeler, supra, that water rates on vacant lands in Long Island City were void. The question there arose whether or not it appeared in the record that the lands were vacant, and Judge Finch said (page 314, 129 N. Y., and page 460, 29 N. E.):

"But I am also of opinion that, whether the lands were vacant, or had buildings upon them, and even whether the water was used or not, are totally immaterial, so long as the rolls imposed a tax."

As to assessing water rates on improved property, the charter of Long Island City (section 9, subd. 4, c. 461, tit. 10, Laws 1871) is almost a copy of the law applicable to Brooklyn (section 18, c. 396, Laws 1859) prior to 1888. See chapter 44, Laws 1888. It seems, therefore, that all water rates formally levied in this city between 1859 and July 1, 1882, were void, and, if the claim of plaintiffs is sound, none, whether on vacant or improved property, could come within the jurisdiction of the board of assessors under the act of 1883. The difficulty in the contention is that water rates are repeatedly mentioned in the act, and the legislature intended that they should be considered by the board. It may be answered that

Remsen v. Wheeler was not decided until 1887, four years after the passage of the arrears act. The water rates were void when laid, and were not made so in 1887 when the court of appeals so decided. The learned lawyer who drew the act of 1883 may have had knowledge, at that time, that the validity of the water rates was questioned. Another answer to the contention of counsel that water rates were not within the scope of the act of 1883 can be made. While the void water rates could not be confirmed by the legislature, without a notice of hearing to the property owners, it was within the power of the legislature to direct a new assessment, not to exceed the original amount, in place of the water rates, provided the property owner had a hearing. This seems to have been done by the act. The board of assessors were directed to relevy so much of the original water rates as was just and equitable, after hearing the property owners.

6. It appears from the testimony in these cases that tabulated statements showing the arrears existing against each parcel of land owned by plaintiffs were prepared by the board of assessors. After these statements were made, a resolution was adopted by the board that a temporary computation of interest at 6 per cent. per annum should be made of all arrears from the date of confirmation to September 30, 1883. Such computation was made, and the amounts of interest were set opposite each item of arrears. So far it appears that the statements were made by general resolutions adopted by the board. On the statements also appear, in some cases, deductions of principal and interest, and on the balance of principal interest at 6 per cent. per annum was computed, by direction of the president of the board, for a period of 18 months, and then a further computation at the same rate for a period of 1 month. The certificates were issued on March 5, 1885, and in many cases are the totals of principal of taxes, assessments, and water rates, after deductions, with interest to September 30, 1883, with added interest to March 31, 1885, and with superadded interest to April 30, 1885. By the act of 1883, the amounts certified were payable without interest for a period of 60 days. Counsel for plaintiffs contend that the board had no authority to add interest after the date of the certificate, and that they nullified the terms of the act by adding interest for a period of nearly 60 days after the certificates were made, when the act provided that they should be payable without interest. I find, on examination of the printed record of the court of appeals, in Terrel v. Wheeler, supra, that the counsel for the defendant in that case raised the point that, under the act, the assessors were bound to keep a record of their proceedings, and that such record should show in detail the items,—how the certificates were made up. The court of appeals did not agree with the claim of counsel. By the act of 1883, the board were to keep a record of their proceedings, in which should be entered their determination as to the amount to be charged and assessed upon each parcel of land. The act further provides that a majority of the members of the board should constitute a quorum for the hearing of objections, and should concur in the fixing of the amount to be charged upon and against each

parcel of land. The act also provided that they were to determine how much of the arrearages ought, in fairness and justice, to be "laid, assessed, and charged against, and actually collected from said land." There is no proof in the case showing what influenced each assessor to vote for the amount fixed in any certificate. It is true that, in many cases, the amounts fixed agree substantially with the amounts shown on the tabulated statements, including interest added and superadded. In no case did the assessors fix an amount in excess of the arrearages, including statutory defaults, even if the water rates void on constitutional grounds are struck out of the statements. The assessors could take testimony under the act, if they desired to, and they were also to act on their own knowledge and information. They could have statements prepared of arrearages and computations of interest, but in the end they were simply to decide upon an amount which was justly and fairly due from the land to the city. The board had jurisdiction over any parcel of land in this city, as then constituted, if arrearages of taxes, assessments, or water rates existed on such parcel. Bowns v. May, 120 N. Y. 357, 24 N. E. 947. My point is that, though the sums fixed agree with the amounts in the tabulated statements, including the added interest, yet the assessors judicially decided that such sums were fairly and equitably due, as they were directed by the act of 1883. If the sum fixed was, in their opinion, justly and fairly due, it is not material how they reached their conclusion.

If it be assumed that the assessors agreed upon an amount in the way shown by the tabulated statement, and were in error in so doing, I am of opinion that the errors cannot be corrected in a collateral action. It must be conceded that, if the assessors had no jurisdiction, or possibly if they exceeded their powers (though a learned judge at special term seems to have held to the contrary in Norris v. Jones, 7 Misc. Rep. 198, 27 N. Y. Supp. 209), the certificates would be void. The amounts fixed were erroneous, but not invalid; but, even if held invalid, they were so only as to the excess of interest, and a court of equity would, in my opinion, have power to reduce the amounts by the invalid excess. The authorities as to assessments and taxation in this state are many, and I confess it is difficult to understand fully all the fine points without a careful and repeated perusal, though they seem plain on the question that there is a distinction between an erroneous and an invalid assessment. As to the assessment of taxes, if the assessors act within their jurisdiction, there are many authorities that an error can only be corrected by certiorari. Foster v. Van Wyck, 2 Abb. Dec. 167; Swift v. Poughkeepsie, 37 N. Y. 511; Van Deventer v. Long Island City, 139 N. Y. 133, 34 N. E. 774; In re McLean, 138 N. Y. 158, 33 N. E. 821; Mayor, etc., v. Davenport, 92 N. Y. 604. It has been claimed that the remedy by certiorari is discretionary. In the case of Telegraph Co. v. Grant, 137 N. Y. 7, 12, 32 N. E. 1005, Judge Finch stated:

"It is no answer to urge that the allowance of the writ is discretionary. That discretion is not arbitrary, and it must be assumed that the writ will always issue where there is a proper subject to review."

7. The owner of the property in suit, and from whom the plaintiffs derive title, by his representative, Mr. Edward H. Litchfield, made certain tenders of payment of taxes, etc., to the registrar of arrears under chapter 572 of the Laws of 1880, and I shall assume and find that said tenders were made as testified to by Mr. Litchfield, and were in accordance with the law. The tenders were rejected by the registrar, on the ground that Mr. Litchfield only offered to pay a one-fifth installment of the taxes, etc., with interest from the date of the passage of the act, whereas the city claimed that he should pay with interest from the date of confirmation of each tax. The tenders were made and rejected in September, 1880, and, after that time, Mr. Litchfield did nothing towards enforcing the same until the commencement of these actions. In the spring of 1883, he testifies that he had several interviews with Mayor Low, who was then in office, in relation to a settlement of the taxes in arrears, but it does not appear that he ever mentioned to him that he had made the tenders or claimed any rights thereunder. On the second interview, Mayor Low stated that the act of 1883 was passed, or had been passed, under which the assessors were to act on all property in arrears. I quote from the testimony of Mr. Litchfield:

"That I must go before them. I told him that I did not care to go before them; that I held that they had no jurisdiction over our property for certain legal reasons. He said that made no matter, that I should have to go before them."

At the time, or about that time, the tenders were rejected by the registrar, it had been decided by Justice Barnard of the supreme court, at special term, that the city was right in its contention as to interest. Subsequently, a property owner whose tender was rejected on the same ground commenced proceedings in the supreme court by mandamus to enforce the tender. The city succeeded at the special and general terms of the supreme court, but was defeated in the court of appeals. People v. O'Keefe, 90 N. Y. 419. The matter was decided in that court on November 28, 1882, or over two years before the assessors acted on the property involved in this litigation, under the arrears act of 1883. It seems to me to be very material that the registrar, in rejecting the tender, was acting in good faith, and that he was upheld in his claim by the general term of the supreme court. It shows that the law was difficult to be construed, and its construction could only be settled by the court of last resort. The counsel for the plaintiff have cited many cases on the law of tender and its effect on the obligation sought to be extinguished. I hold that a tender made to a public official is very different in its effect from a tender made to an individual on a private contract. The tender to the registrar of the first installment of the amount required to be paid under the act of 1880 did not absolve Mr. Litchfield from all subsequent payments or tenders of payment required by that act. The registrar could only act on the tender made to him, and could not lay down a future policy for the city, or determine how the law should be interpreted during the four years after 1880. Mr. Litchfield had no right to assume that tenders of subsequent installments would

be rejected, particularly after November 28, 1882, when the court of appeals decided that his construction of the law was the correct one. It is probable that a court of equity would have relieved him from his default of tender of the second and third installments due in 1881 and 1882, and perhaps even from the nonpayment of subsequent taxes for 1880 and 1881, if he had applied in due time; but I fail to see how he could be released from the default of the tender of the installments of 1883 and 1884, or of the taxes of 1882, 1883, and 1884. Mr. Litchfield knew, when he made the tenders of 1880, that he was dealing with an officer of limited powers, and that such officer had no authority to make a contract or to waive a statutory provision. The registrar simply made a mistake in the law, though he acted under a decision made by a learned judge at special term, which decision was subsequently approved of by the general term. The law was of doubtful construction. The judges disagreed. I mean to say that the rights of the plaintiffs under the tender should be strictly construed, and that Mr. Litchfield, Sr., and his successors in interest acquired the rights which the tender gave them, and no more. On this point, I refer also to my opinion on the decision of the motion for a preliminary injunction.

8. It is also claimed that the taxes for the years 1881, 1882, 1883, and 1884 were invalid because the assessment rolls did not contain two columns,—one headed "Reductions and Cancellations," and another headed "Arrears." The charter so required, and the assessors should read and literally follow the law. Nevertheless, I fail to see how the omission in anywise invalidated the taxes. Suppose the charter read that the rolls, on the outside, should have an indorsement, "These rolls are to be transferred to the registrar of arrears in twelve months after date of confirmation," and such indorsement was omitted, I do not think the omission would affect the validity of the taxes. The headings omitted are simply the headings of columns to be filled in after the taxes are confirmed. ' Judge Allen said, in Westfall v. Preston, 49 N. Y. 349, 353:

"A substantial compliance with the statute in the measures preliminary to the taxation of persons and property, in all matters which are of the substance of the procedure, and designed for the protection of the taxpayer and the preservation of his rights, is a condition precedent to the legality and validity of the taxes."

The headings of the columns are not of the substance of the procedure, or designed for the protection of the taxpayer. The first column is for the purpose of correct bookkeeping after the confirmation of the taxes, and the second is filled up, in case the property is in arrears, in order to give notice to the delinquent. The columns can be headed after the taxes are confirmed without any injury to the taxpayer.

9. There are two certificates involved in this litigation, in which the board of assessors joined lots, as shown on the ward map, in single parcels. One certificate was made as to lots 5 to 14, inclusive, in block 3, and the other as to lots 1 and 2 in block 78. The taxes, etc., of the lots referred to, prior to July 1, 1882, had been assessed separately, or at least for a portion of the time, and water rates were included in the arrears on the lots in block 78, but not

on the lots in block 3. I am of the opinion that the assessors had no power to join lots in a single certificate, under chapter 114 of the Laws of 1883. In the case of Terrel v. Wheeler, supra, the court of appeals held that the board could not levy a new tax, or increase a tax, and that they were to take the arrears in form as they were levied or attempted to be levied. If the assessors joined lots, then, they reassessed the tax on lot 5 upon lot 14, that on lot 6 on lot 13, and so on. In other words, they took the arrears which existed separately on each lot, from 5 to 14 inclusive, and reassessed what they thought was equitable and just on the new parcel, consisting of the entire plot of lots. In the case of May v. Traphagen, 139 N. Y. 478, 34 N. E. 1064, the court of appeals substantially held that, under the charter, the assessors should assess each lot as shown on the ward map separately, and should not join lots together. Under the arrears act, the board had jurisdiction over any parcel of land affected by arrears to consider each parcel by itself and certify the amount to be collected therefrom. By section 3 of the act it was provided that it should not be necessary, in the certificate, to state the name of the owner, nor to describe the premises, otherwise than by block and lot numbers, and by section 12 it was further provided that the assessors could apportion certificates, and, in such case, the assessors should cause the assessment map to be altered so as to show such subdivisions and give a new number to each of the same. The clause in section 12 would seem to plainly indicate that the certificate should contain a single number, and should conform to the assessment map. If it be assumed that water rates, invalid on constitutional grounds, were within the scope of the act of 1883, as I have already held, then I think that, under the notice of hearing as provided in the act, the property owners were only heard as to the parcels affected by the invalid water rates, and that they had no hearing or right of hearing as to any assessment on the joined parcels. Mr. Litchfield was formally notified, by advertisement, to appear and give his reasons why any part of the arrearages should be reduced or remitted. For example, he was bound to give his reasons why the arrears existing against lot 5 in block 3 should be reduced or canceled, and was not called upon to give his reasons why the arrearages on lot 5 should not be reassessed on lot 14. Again, the taxes, etc., not invalid on constitutional grounds, but invalid for technical reasons, were confirmed as against the land on which the tax was laid. The taxes on lot 5 were not confirmed and made a lien on lot 14. For the reasons stated, I hold that the two certificates, although on their face valid, on the proofs are void, unless validated by subsequent legislation.

It is claimed by the learned counsel for the city that the certificates where the lots were linked together were confirmed by section 1 of chapter 33 of the Laws of 1892. This section merely amends section 3 of title 8 of the revised charter of this city, passed in 1888 (chapter 583), by inserting the words:

"And shall also be applied to the payment of the expenses of carrying out the provisions of this act, when certified by the head of the department incurring such expense, and approved and allowed by the mayor."

The amendment, otherwise, does not change the section; therefore, we must look for the confirmation in the charter as passed in 1888. Ely v. Holton, 15 N. Y. 595. When we look at the act of 1888, we find that chapter 114 of the Laws of 1883 is thereby repealed (section 35, tit. 22, c. 583, Laws 1888), and substantially the same language is inserted in section 3 of title 8 as in the act of 1883, except as follows: "And the amount so fixed, determined, and certified by them in each case is hereby declared to be and is made a valid and binding tax," etc.,—instead of, as in section 2 of the act of 1883, "And the amount so fixed and determined and certified by them in each case shall thereupon become and be a valid and binding tax," etc. The confirmation in the revised charter was enacted to preserve the rights of the city acquired pursuant to chapter 114, and not to confirm acts of the assessors where they did not follow the law. The new charter, by its terms, only confirmed the determination of the assessors made pursuant to the act. Such charter was passed simply to bring all the laws applicable to this city into a single act. People v. Bell (City Ct. Brook.) 4 N. Y. Supp. 869, affirmed in court of appeals, 125 N. Y. 722, 26 N. E. 756.

10. Judgment will be entered in the two cases dismissing the complaint, except as to the two certificates set forth in the last subdivision of this opinion. As to such certificates, judgment is ordered for the plaintiffs. In view of the amount involved in this litigation and of the intricate questions of law arising therein, I think that the plaintiffs are entitled to have my decision reviewed by the general term before the city should be permitted to enforce its claim by a sale, and therefore will grant a stay after the appeal is perfected.