ROSETH REALTY CO., INC., Respondent, *v.* BRIGHTON AND BENSON-HURST ELECTRIC RAILROAD COMPANY and Others, Defendants, Impleaded with ANNA C. DE SELDING and Others, Appellants, and BROOKLYN DEVELOPMENT COMPANY and Another, Respondents.*

Second Department, February 14, 1930.

*Frederick Hemley* [*Albert J. Rifkind, Lewis Bassiano* and *Benjamin H. Margolis* with him on the brief], for the appellants.

*George W. I. Dwinell* [*Jonathan Greene* with him on the brief], for the plaintiff, respondent.

*James A. Sheehan,* guardian ad litem, for the respondent Edwina A. Somerville.

*Alfred J. Talley,* for the respondent Brooklyn Development Company.

SCUDDER, J. In 1880 James A. Williamson conveyed a strip of land 50 feet wide and about 6,125 feet long to the New York and Brighton Beach Railroad Company. The deeds contained the following clause: " This conveyance is made and delivered upon the further express condition that when the lands and premises, or any part thereof, shall cease to be used for the purposes set forth in the special acts of the Legislature in relation to railroads, then the said lands and premises shall revert to the said party of the first part, his heirs, executors and assigns, in the same manner and to the same extent as provided for in said public acts."

Appellants allege that they are the only living direct lineal

descendants of said Williamson and have succeeded to his right of reverter, and that neither Williamson nor any of his descendants have heretofore asserted said right of reverter.

The land (now vacant) has not been used for railroad purposes since 1898. Nothing remains of the railroad. The land was sold for taxes in 1890, and conveyed by the Comptroller to the State in 1894. Jane Gilfeather acquired title in 1903 by letters patent.

Williamson, the original grantor, died, leaving two children, S. Stryker Williamson and Sarah E. Cole, to whom he devised his estate. In 1898 the said children conveyed to Carrie V. Mesick certain abutting premises which were later conveyed to the defendant Brooklyn Development Company. The deeds contained this clause: " Excepting therefrom so much of said premises heretofore taken for railroad purposes. And all the right, title and interest of the parties of the first part of, in and to said land taken for railroad purposes and all the right, title and interest of said parties of the first part of, in and to the said above described premises."

Appellants are the heirs at law of Williamson's devisees.

Jane Gilfeather died in 1915, and the devisees under her will conveyed an undivided interest to the plaintiff, respondent, who brought this action to partition the property in question. Appellants have counterclaimed for ejectment and damages for withholding since the counterclaim was served.

The facts are not disputed. The question is one of law only.

The plaintiff, respondent, contends that its title, which was derived from the State, is paramount and is effective to cut off any rights to a possibility of reverter, and that appellants' right to a possibility of reverter was destroyed by the conveyance by the Williamson heirs to Carrie V. Mesick.

Appellants contend that the conveyance by S. Stryker Williamson and Sarah E. Cole to Carrie V. Mesick, and by her to the Brooklyn Development Company, carried no interest and was a nullity. I think it unnecessary to decide that question, because, in my opinion, the tax sale wiped out any interest the appellants may have had in the property.

Appellants contend that the inchoate right to the " possibility of reverter " did not come into existence until the same was declared and an attempt made at enforcement by entry or ejectment, and that as the right was not asserted until their counterclaim for ejectment was served, it was not subject to extinction and could not be destroyed without the volition of those in whom alone the right could ever exist.

No question is raised as to the regularity of the tax sale proceedings and the subsequent deed to the State and letters patent from the

State. In a tax sale proceeding, to which all persons having vested estates at law or in equity are made parties or are proceeded against by the publication of notice as unknown owners, there are cut off not only vested estates, but also estates contingent or unvested, including the possible interests which might, under contingent limitations, vest in persons not yet in being. (*Jackson* v. *Babcock*, 16 N. Y. 246.)

The subject is dealt with at length in Blackwell on Power to Sell Land for the Non-payment of Taxes (5th ed.), where it is said (at pp. 908, 909): " In those States where the tax is a charge upon the land alone, where no resort in any event is contemplated against the owner or his personal estate, and where the proceeding is strictly *in rem*, the tax deed will undoubtedly have the effect to destroy all prior interests in the estate, whether vested or contingent, executed or executory, and those in possession, reversion, and remainder. In such case the tax law itself is notice to the whole world of the liability of the land for all public assessments; and every one claiming an interest in the land is bound at his peril to pay the tax, and thus protect that interest from forfeiture or sale. If he neglects his duty in this respect, his title becomes extinct, and a new and independent title becomes vested in the purchaser, freed from all prior liens, incumbrances upon the former estate, and, indeed, of every interest carved out of the old fee. The fee of the land passes, and not the interest simply of the former owners."

The general rule is " to give the purchaser, after failure to redeem within a time allowed, an absolute title. Such is and always has been the rule in this State as to tax titles upon sales for default in the payment of the usual taxes imposed for the support of the State and local governments." (*Terrel* v. *Wheeler*, 123 N. Y. 76, 84.)

These appellants, or those from whom they derived their interest, had an opportunity to protect their interest in the property by paying the taxes. By so doing, they could have conserved what they claim was an " inchoate right " which has now come into existence. They argue they were not required to do so because the right they assert vested long after the tax sale.

The tax sale and the title obtained thereunder through the State of New York vested a fee simple absolute in the grantee. Such title was superior to any title now claimed by appellants.

The interlocutory judgment of partition and sale should be affirmed, with costs.

Present — LAZANSKY, P. J., HAGARTY, CARSWELL, SCUDDER and TOMPKINS, JJ.

Interlocutory judgment unanimously affirmed, with costs,