PEOPLE *ex rel.* ULLRICH *v.* BELL, Police Commissioner.

(*City Court of Brooklyn, General Term.* April 22, 1889.)

1. MUNICIPAL CORPORATIONS—POLICEMEN—VIOLATION OF RULES.

Proof that a policeman has ordered cigars from a manufacturer to be delivered to a number of persons in small quantities; that the cigars were charged to him; and that he was in the business of canvassing for the sale of cigars,—shows *prima facie* a violation of rule 114 of the police department of the city of Brooklyn, which provides that "each member of the police force shall devote his entire time and attention to the business of the department, and he is expressly prohibited from following any other calling, or being engaged in any other business. Although certain hours are allotted to members of the force for the performance of duty on ordinary occasions, they must at all times be prepared to act immediately on notice that their services are required.

2. STATUTES—CONSTRUCTION—REPEAL AND RE-ENACTMENT.

By an "act to revise and combine in a single act all existing special and local laws affecting public interests in the city of Brooklyn" the statute authorizing the police commissioner to make rules was repealed, but was re-enacted in the same words in the revising act. *Held,* that the repeal was merely to carry out the purpose of combining the various laws in question, and did not abrogate the rules theretofore promulgated, so as to necessitate the making of new rules after the revision took effect.

*Certiorari* by Louis Ullrich to review the proceedings of James D. Bell, police commissioner of the city of Brooklyn, in discharging him from the police force of the city.

Argued before CLEMENT, C. J., and VAN WYCK, J.

*Sidney Williams,* for relator. *Frank E. O'Reilly,* for respondent.

CLEMENT, C. J.   The relator, Louis Ullrich, a patrolman, on June 29, 1888, was dismissed from the police force of this city for a violation of rule 114 of the regulations of the department, which reads as follows: "CXIV. Each member of the police force shall devote his whole time and attention to the business of the department, and he is expressly prohibited from following any other calling, or being employed in any other business. Although certain hours are allotted to the members of the force for the performance of duty on ordinary occasions, they must at all times be prepared to act immediately on notice that their services are required." We think that the testimony taken before the commissioner was sufficient to make out a *prima facie* case against the relator, and, in the absence of explanation, would justify a decision against him. It was proven that he had ordered cigars from the manufacturer, to be delivered to a large number of persons in small quantities, and they were charged to him; and the evidence substantially shows that he was in the busness of canvassing for the sale of cigars.

The mere statement of the above facts shows that rule 114 is a very proper and necessary one. A policeman, who is allowed to obtain orders for cigars, and receive a profit or commission for so doing, could add substantially to his income, for it is a well-known fact that cigars are sold in grocery stores, whose proprietors sometimes claim the use of a good portion of the sidewalk; also in saloons and many other places, where the policeman can in many ways do favors to the owners. An evil-minded policeman, if permitted to peddle,

could coerce storekeepers to buy goods under fear of arrest for some technical violation of the law. It is contended that at the time of the dismissal of Ullrich there were no existing rules in the department. The regulation in question was promulgated in October, 1886, by virtue of the charter of 1873. By chapter 583 of the laws of 1888, (the revised charter,) chapter 863 of the Laws of 1873, (the former charter,) and chapter 377, of the Laws of 1880, were repealed, but were re-enacted in the same words in the Revision. The statute which in terms repeals the statute giving the police commissioner power to make rules also re-enacts the same without any change. Chapter 583 of the Laws of 1888 is entitled "An act to revise and combine in a single act all existing special and local laws affecting public interests in the city of Brooklyn." The object of the Revision is apparent from the title. The charter of 1873 was incomplete, and did not repeal any act except where it was inconsistent with such act. Many of the provisions of the charter of 1854, and its amendments, were still in force, and also there was a large number of special acts affecting the city; and under chapter 626 of the Laws of 1886 commissioners were appointed to revise the special and local laws affecting the city of Brooklyn, and to combine all such laws in a single act. In examining the present question, we have not found an authority in this state directly in point, but in other states the question has many times been decided. In a case which arose in Massachusetts, Chief Justice SHAW said, ( *Wright* v. *Oakley*, 5 Metc. 400–406:) "In construing the Revised Statutes and the connected acts of amendment and repeal, it is necessary to observe great caution, to avoid giving an effect to these acts, which was never contemplated by the legislature. In terms, the whole body of the statute law was repealed; but these repeals went into operation simultaneously with the Revised Statutes, which were substituted for them, and were intended to replace them, with such modifications as were intended to be made by that Revision. There was no moment in which the repealing act stood in force, without being replaced by the corresponding provisions of the Revised Statutes. In practical operation and effect, therefore, they are rather to be considered as a continuance and modification of old laws, than as an abrogation of those old and the re-enactment of new ones. In order to construe them correctly, we must take the whole of the Revised Statutes, together with the act of amendment and the repealing act, and consider them in reference to the known purposes which the legislature had in view in making the revision." See, also, *Middleton* v. *Railroad Co.*, 26 N. J. Eq. 269–273; *Scheftels* v. *Tabert*, 46 Wis. 439, 446, 1 N. W. Rep. 156; *Lisbon* v. *Clark*, 18 N. H. 234. See, also, authorities collated in End. Inter. St. § 492. The reasoning of the above cases is conclusive on the point under discussion. The object of the act of Revision was not to repeal the laws which were re-enacted, but to combine them in a single act, and the repealing clause was inserted only to carry out such purpose. It follows that it was not necessary for the commissioner to make new regulations after the passage of the act of Revision, and the proceedings taken before him must be affirmed, with $50 costs and disbursements.