## In re BRUNDAGE.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

1. TRANSFER TAX—APPRAISAL OF ESTATE—DEDUCTIONS.
   Under Laws 1892, c. 399, requiring debts and claims to be deducted from the appraised value of estates in determining the transfer tax, taxes paid by the estate of deceased which were not levied until after his death should be deducted in ascertaining the transfer tax.

2. WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEDENT.
   Code Civ. Proc. § 829, providing that a party shall not be examined as a witness in his own behalf as to any communication or personal transaction had with a deceased person, does not prevent a legatee from testifying to relations with deceased exempting him from the transfer tax, under Laws 1896, c. 908, exempting persons who for more than 10 years have stood in the relation of parent and child with decedent from payment of transfer taxes.

3. APPEAL—REVIEW—NECESSITY OF EXCEPTIONS.
   On an appeal from a taxation under the transfer-tax law, exceptions to the appraiser's rulings are not essential, where the cause does not come up on a formal case and exceptions.

Appeal from surrogate's court, Allegany county.

Proceedings for the appraisement of the estate of Benjamin C. Brundage, deceased, under the transfer-tax law. The report of an appraiser appointed by the surrogate court was affirmed, and the legacies taxed thereunder, and John M. Brundage and another, legatees, appeal. Reversed.

On the 13th of September, 1897, the appellants prepared a notice of appeal to this court from the order and decree of the surrogate of Allegany county entered on the 13th of January, 1897, assessing the tax to which the property of said deceased is liable under the taxable transfer law of the state; also "from a certain further order and decree of said surrogate, made and rendered in this matter and entered in the office of said surrogate on the 10th day of September, 1897, affirming in all respects the said order and decree of January 13, 1897." On the 9th day of December, 1895, Benjamin C. Brundage died, being then a resident of Andover, Allegany county, leaving a last will and testament, which was admitted to probate. The will contained a bequest to John Maynard Brundage of about the sum of $49,110.20, and to Belle Brundage of about the sum of $11,856.03. The testator was a bachelor, and left him surviving neither wife, child, nor children. His next of kin and heirs at law "were a brother, nephews, nieces, and children of a deceased niece." By an order made by the surrogate of Allegany county on the 4th of March, 1896, W. N. Renwick, Esq., was appointed appraiser, "to appraise and fix the fair market value of the property of which Benjamin C. Brundage died seised and possessed, subject to taxation under and pursuant to chapter 483 of the Laws of 1885 and acts amendatory thereof." On the 11th of March, 1896, he issued notices for a hearing before him on the 26th of March, 1896. On the 4th of March, 1896, he took and subscribed an oath of office. After taking the testimony of several witnesses, he made his report on the 2d day of June, 1896, and also returned the evidence taken by him. In his report he

stated the legacy of John M. Brundage at $49,110.20, and tax assessed thereon at $2,455,51; and the legacy of Belle Brundage at $11,856.03, and the tax thereon at $592.80; and he enumerated certain other legacies and taxes there-on not necessary to be considered on this appeal. The order confirming the report of the appraiser bears date January 13, 1897. An appeal was taken therefrom to the surrogate, February 25, 1897; and an order was made on the appeal by the surrogate, June 4, 1897; and notice of appeal to this court from both orders of the surrogate was given September 13, 1897. John Maynard Brundage was born January 2, 1856. His father, Andrew J. Brundage, died June 20, 1861, at Monroe, Wis., and his mother came east with her children, and in the fall of 1861 made their home with the testator. She died in April, 1875. The personal property of the testator inventoried $63,480.37.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

F. A. Robbins, for appellants.
Joseph F. Rice, for respondents.

HARDIN, P. J. We think the appraiser erred in refusing to deduct the taxes, which were assessed against the property of the deceased and which were paid, from the valuation of the property made by him.

In Re Westurn's Estate, 152 N. Y. 100, 46 N. E. 317, it was said:

"It is plainly inferable from the sixth section of the act that the debts of the decedent are to be deducted in arriving at the valuation of the property and in fixing the tax. * * * The principle that, in administering the statute, debts, commissions, and expenses of administration should be deducted in ascertaining taxable values, accords with the general practice, and is permitted by a just construction of the law."

See Acts 1892, c. 399, §§ 6, 8. See, also, In re Lines' Estate, 155 Pa. St. 379, 26 Atl. 728.

The same rule was held in Re Gould, 19 App. Div. 353, 46 N. Y. Supp. 508, in the following language:

"In estimating the amount taxable under the transfer tax act, the debts of the deceased, the expenses of administration, and the commissions of the executors are to be deducted."

The appraiser finds that the tax which the executor paid December 31, 1895, $80.05, and January 3, 1896, $2.09, "should not be deducted from the assets of the estate of deceased, because the taxes were not levied and did not become a lien upon the property of the deceased until about the 13th or 15th day of December, 1895; the assessment rolls not being issued and put in the hands of the collectors until after the adjourned session of the board of supervisors of Allegany county, in 1895." The assessment was made against the deceased, and was binding upon him, although the precise amount of the tax had not been ascertained until the warrants were delivered to the collectors.

In Re Babcock, 115 N. Y. 451, 22 N. E. 264, it was held:

"An assessment so far completed that the name of the person mentioned as owner cannot be changed or altered by the assessment officers before the death of such person is payable from his estate in due course of administration."

That case refers to Rundell v. Lakey, 40 N. Y. 513, and quotes approvingly the doctrine laid down there in the opinion of Grover, J., in which opinion he says that:

"The time when they became so liable was the time of the completion and delivery of the roll, although the amount of the tax was not ascertained and fixed for some two months afterwards, yet the foundation of the liability was complete. They owned the property at the time fixed by law for determining who should be taxed therefor as owner."

Appellant John Maynard Brundage claimed upon the hearing before the appraiser, and before the surrogate, and now insists, that the appellant and the testator sustained towards each other the mutually acknowledged relation of parent and child for a period of more than 10 years, and that, therefore, his legacy should bear a tax at the rate of 1 per cent. instead of 5 per cent. The appraiser and the surrogate held otherwise. The appellant claimed the benefit of the exemption specified in section 2 of chapter 399 of the Laws of 1892. The language in that section relating to this question was as follows: "To any person to whom any such decedent, grantor, donor or vendor for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent." In section 221 of chapter 908 of the Laws of 1896, in respect to exceptions and limitations of the tax to 1 per cent. instead of 5 per cent., the language used is, viz. "or to any person to whom any such decedent, grantor, donor or vendor for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent." The appraiser found that the relation of parent and child was not mutually acknowledged between the two for the period of 10 years; and in his report he refers to and comments upon the evidence bearing upon that question, and concludes his opinion upon that subject by the following:

"I am of the opinion that, for the ten years last preceding the death of the testator herein, the relationship of Benjamin C. Brundage to John Maynard Brundage was not continuously acknowledged by Benjamin C. Brundage and John Maynard Brundage to be that of a parent, and that for ten years last preceding the death of Benjamin C. Brundage he did not stand in the mutually acknowledged relation of a parent to John Maynard Brundage, and the legacies of John Maynard Brundage should be taxed at the rate of five per cent."

Since the date of the appraiser's report the court of appeals have decided in Re Beach's Estate, 154 N. Y. 242, 48 N. E. 516, some questions alluded to by the appraiser, and in the Beach Case the court held that:

"A testator may sustain to a person not of his blood, and not legally adopted, the relation of a parent, so as to entitle such person to the benefit of the exemption. The exemption based upon the 'mutually acknowledged relation of parent' is not limited to illegitimate children, but extends as well to persons not of the blood of a testator, between whom and the testator the relation of parent and child has been mutually recognized for ten years prior to the testator's death. The fact that a person was at the inception of the mutually acknowledged relation an adult does not exclude him from the benefit of the exemption."

Upon the hearing before the appraiser, John Maynard Brundage was called as a witness, and gave evidence bearing upon the question of the relation and the acknowledgment thereof between him and the testator, and stated that he had had various conversations with the testator during his lifetime as to what arrangement and agreement was made between the testator and the witness when he

went to live with the testator. He was then asked the following question: "Q. You may state those conversations concerning those arrangements." This question was objected to as incompetent and improper and inadmissible, under section 829 of the Code of Civil Procedure, and the objection was sustained. Later on, in the course of the examination of the witness, he was asked the following question: "Q. You may state what you heard said between your wife and uncle, in Kansas, in 1888, pertaining to that agreement and arrangement." This was objected to, and the case states that the appraiser reserved his ruling. We do not find anything in the case indicating that he subsequently passed upon the admissibility of that evidence favorable to the appellants. The appellant offered to show, by himself as a witness, "the confidential communications and acknowledged relations growing out of an agreement between them, and also for the purpose of showing the acknowledged relation of parent and child between decedent and the witness." A general objection was taken to that offer, and sustained. Other circumstances were offered to be shown by the witness "for the purpose of showing the acknowledged relation between the two of parent and child," which were rejected by the appraiser.

Upon the important question of fact before the appraiser as to whether there was the mutually acknowledged relation of parent and child, we think the testimony which was offered to be given and was excluded was material, and would have been important in solving the issue presented. There was a great conflict of evidence upon that question, and it is difficult to say what influence the testimony would have had which was rejected. Apparently the appraiser rejected the evidence under the supposition that the same was inadmissible under section 829 of the Code of Civil Procedure. In Re Gould, 19 App. Div. 352, 46 N. Y. Supp. 506, it was held that a residuary legatee called as a witness in an appraisal proceeding "is not forbidden by any provision of section 829 of the Code of Civil Procedure from testifying to interviews had by him with the decedent tending to show that a particular legacy was given to him by the will in payment of a debt for services rendered by him to the decedent." We think the principle enunciated in that case is applicable here. That case quotes approvingly In re Hoffman's Estate, 143 N. Y. 327, 38 N. E. 311.

We think the error of the appraiser in rejecting the evidence ought not to be disregarded, although there was no formal exception taken to the exclusion of the evidence. This record comes to us on an appeal from all the proceedings, and not upon formal case and exceptions. It is a case where the court can see that the ruling may have been very prejudicial to the appellant, and we ought not, therefore, to say that an exception is indispensable to a review of the errors committed during the hearing before the appraiser. Dovale v. Ackerman, 11 Misc. Rep. 248, 33 N. Y. Supp. 13, and cases cited.

Inasmuch as the question of fact is to be determined upon conflicting evidence, in order to solve the question whether there was a mutual relation of parent and child sustained for 10 years between the appellant and testator, we forbear to express an opinion

which might be influential upon a second hearing, when the evidence is more full and complete upon the question.

2. Chapter 908 of the Laws of 1896 was a re-enactment of chapter 399 of the Laws of 1892, and it is not necessary to determine whether there is any difference in the provisions of the two laws at this time. They are nearly identical in respect to the question involved in this case. We think the change in the law does not prevent the assessment and collection of the inheritance tax.

In Re Prime, 136 N. Y. 354, 32 N. E. 1092, Andrews, C. J., said:

"It is very plain that the legislature, which had established a new policy in the taxation of the right of devolution or succession, and was year by year perfecting the system and enlarging its scope and efficiency by new legislation, never intended to repeal the prior acts in these respects in which the new enactment corresponded in meaning with the prior law, so as to exempt from taxation estates or interests in course of settlement, but where the tax had not yet been levied."

See People v. Bell (City Ct. Brook.) 4 N. Y. Supp. 869; Laws 1892, c. 671, § 31.

The foregoing views lead to the conclusion that there should be a reversal of the orders appealed from, and the proceedings remitted to the surrogate's court of Allegany county, with costs to the appellants payable out of the estate.

Orders appealed from reversed, with costs to the appellants payable out of the estate. All concur.