Erlanger, J.
In this proceeding, the question is presented whether the tax commissioners have properly included in their assessment, for the purposes of taxation of the relator’s capital stock, items aggregating $1,236,886.61, being discounts collected but not earned, and an item of $1,191,000 for federal income taxes, determined March 15, 1919, but payable in installments after May 1,1919, the day as of which the condition of the relator was reported for this assessment. The tax is not levied upon all the assets of the bank; it is a tax on the shares of stock based upon items of valuation which the statute defines. Tax Law, § 23. These subjects of valuation are the amount of capital stock paid in, the surplus of the bank and its undivided profits, the gross amount of which, when divided by the number of outstanding shares of stock, is taken as the value of each share for the purposes of taxation. The bank is required by the Tax Law (§ 23) to report these items, but not its general assets or its capital as employed in the business, and the distinction is quite clearly drawn by section 24 of the act, when requiring a determination of the value of bank shares, in the cases of banks in liquidation, by a valuation of the “ actual assets ” of the bank. Under the statute, the assessment of the shares of this relator proceeds upon the ascertainment of “ book value,” not market value, of the shares, and is based solely upon a consideration of the capital stock, surplus and. undivided profits. Amoskeag Savings Bank v. Purdy, 231 U. S. 373, 387. The question is, therefore, whether the items now in dispute represent gains in the business which may be classed as “ undivided profits.” If they were not profits ” of the business they would certainly not be available to increase the surplus, maintained according to law, and they have no relation, of course, to the items of capital stock paid in. *422 It is apparent that discounts collected, but awaiting the termination of the period for which the paper was discounted before being earned, represent an ascertained profit only so far as the possibility of a loss upon the transaction may be eliminated, as a matter of business judgment. Elements of uncertainty must exist. The borrower may take up the paper before the due date, or the paper may become uncollectible. On the other hand, business experience in the class of discounts carried by these banks may lead to the practice of safely writing the unearned discount as a profit. So far as the relator is concerned, however, the system of bookkeeping to which it may resort has been prescribed by rules of the comptroller of the currency. Following these rules the books are now kept upon an accrual system, as distinguished from a receipt system, and, as a result, profits from transactions, where interest has been earned, although not collected, are shown by the books, while collected but unearned interest is not carried as a profit. In my opinion, the relator is correct in its contention that these interest items must be assessed for taxation, as profits, upon either one system óf bookkeeping or the other; that is, upon the receipt or the accrual system, and that they cannot both be considered as profits. As I have noted, a collection from discounts, not earned, is not necessarily a profit. Earned interest, not collected, is dependent for its character as a profit upon the favorable prospect of collection, but if one class of these items is arbitrarily to be carried as a determined and existing profit, the other should not. The relator is bound to keep its books according to the rules made by the comptroller. As a matter of business judgment, in the management of these banks,, it has evidently been found that the matter of profits is more nearly reflected by accepting the showing of accruals, which *423 may or may not be collected, and by treating these as actual profits, allowing the collections of interest not earned to await the earning period before giving the items collected the character of profits. I cannot hold that this system results in withholding “ profits ” from taxation. It merely serves fairly to determine a point at which the profits are to be deemed exhibited, and so taxed. Profits actually obtained should of course be open to present assessment for taxation, but unearned discounts are not necessarily “ profits.” In People ex rel. Mechanics, etc., Bank v. Purdy, N. Y. L. J., Dec. 18, 1912, cited by the respondents, the court was concerned only with the point whether the borrower’s right to repay the loans, before maturity, deprived the discounts of the character of “ assets.” Apparently these discounts had been reported by the bank, under some system of bookkeeping different from that which this relator is compelled to maintain, and the opinion did not touch upon the question whether the items represented “ profits,” taxable as such. I am of the opinion, therefore, that the item of discounts collected but not earned should be eliminated from this assessment. The items to cover payments to be made for federal income and excess profits taxes, assessed for the year 1918, was a determined charge as of May 1,1919, the day when the report was made by the relator to the tax commissioners. This charge necessarily reduced the moneys otherwise applicable as “ surplus and undivided profits.” It was a fixed obligation, determined by the federal tax return filed March 15, 1919, and, while not payable until June, September and December of that year, in equal instalments, the reduction of the existing profits, as reported, was absolutely measured by the amount so payable. For the purposes of this tax upon the bank’s stock, federal taxes so assessed, although not imme *424 diately payable, would appear to be deductible even if the valuation were directed to “ assets ” of the bank (see Matter of Brundage, 31 App. Div. 348; Matter of Babcock, 115 N. Y. 450), and the reason for deducting the amount so reserved is still more cogent when the valuation is confined to earnings having the character of “ undivided profits.” I conclude that the shares of stock should be reassessed at the sum of $25,139,551.63, representing an assessment of $502.79 per share, and that the relator is entitled to a final order accordingly, with costs.
Ordered accordingly.