## LOBBAN, COUNTY TREASURER, ETC., v. STATE, EX REL. CARPENTER, ET AL.

Taxation — Liens of Taxes, Priority — Mortgage — Tax Receipt — Mandamus.

1. Although the statute constitutes a tax upon personal property a lien upon the real estate of the person assessed, such lien is subordinate and inferior to an antecedent mortgage upon the real estate.

2. A tax is not a lien unless expressly made so by statute, and when liens are expressly created by statute, they are not to be enlarged by construction.

3. Where one purchasing real estate at foreclosure sale under a mortgage antecedent, and therefore superior, to the lien of taxes levied upon personal property (such person not being personally liable for the taxes) pays all the taxes levied against the said real estate, the same being all the taxes for which the lands are then liable; since the personal tax lien was subordinate to the mortgage, he is entitled to a receipt from the county collector in full for all taxes against said lands, and then chargeable thereto ; and to enforce that right mandamus is a proper remedy.

[Decided March 12, 1901.]

Error to the District Court, Sheridan County, Hon. Joseph L. Stotts, Judge.

Mandamus in the name of the State, on the relation of Mary L. Carpenter and Francis Bacon, against J. M. Lobban as treasurer and ex-officio collector of taxes of Sheridan County, to compel said treasurer to issue and deliver to the relators a tax receipt in full for all taxes due upon certain lands. The facts are stated in the opinion.

*Charles Lenwood*, county attorney, and *Appelget & Mullen*, for plaintiff in error.

Mandamus in this case does not lie. The taxes were a lien upon the land at the time of the foreclosure of the mortgage, and the priority of liens might have been de-

termined· in an action to foreclose the mortgage by making the county a party defendant. That would have been in the ordinary course of law. Again, an action might have been maintained to quiet title. So, the relators could have paid the tax claimed to constitute a lien, and brought suit to recover it back. (State v. Nelson, 4 L. R. A., 300.) The treasurer had no authority to release the tax lien. (Neil v. Barron, 8 O. S. & C. P., 424.) There was an adequate remedy at law. (High Ex. Leg. Rem., Sec. 80, 81 ; People v. Board, 27 N. Y., 378 ; People v. Mayor, 25 Wend., 680; U. S. v. Clock, 128 U. S., 40 ; San Mateo Co. v. Maloney, 71 Cal., 205 ; Howland v. Eldridge, 43 N. Y., 457 ; State v. Whiteside, 3 L. R. A., 777.) The right to mandamus must be clear. (High, Secs. 9, 10, 14.) The county is a necessary party since the treasurer has no interest in the taxes. He does not represent the corporate interest of the county to such an extent that a determination against him will bind the county. He is not directed to issue a receipt in full as the relators demand. He performs his whole duty when he receipts for the money he receives.

The tax lien is superior to that of the antecedent mortgage. (Osterberg v. Union Trust Co., 93 U. S. 424 ; Cooley on Taxation, p. 445 ; State v. Central Trust Co., 36 C. C. A., 214 ; Morey v. Duluth, 77 N. W. 829 ; Cal. L. & T. Co. v. Weis, 50 Pac. 697.)

*E. E. Lonabaugh*, for defendants in error.

By the foreclosure of the mortgages by advertisement, as permitted by statute, the relators obtained title to the lands free and clear of any and all subsequent liens and incumbrances. (Pearson v. Gooch, 40 Atl., 390 ; Mutual L. & B. Co. v. Haas, 27 S. E. 980.) Mandamus is an appropriate remedy. The tax is not attacked, nor is its legality in question. The tax originally assessed against the mortgagor has ceased to constitute a lien upon the lands. The relators ought to have a receipt showing the payment of all the taxes standing against the lands.

There is no adequate remedy at law. (McNary v. Wright-man, 52 Pac., 910.) The lien of a tax levied upon personal property, on the lands of the person assessed, is inferior to a prior mortgage. (Gifford v. Calloway, 46 Pac., 626 ; Miller v. Anderson, 47 N. W., 955 ; Bib-bins v. Clark, 57 N. W., 884 : Macalt v. Newark, 42 N. J. L., 45.)

POTTER, CHIEF JUSTICE.

In February, 1890, James H. Hopkins, then the owner of certain land in Sheridan County, executed two mort-gages, covering separate tracts thereof, to Alfred T. Ba-con, for $3,000 each. At a sale, upon foreclosure by advertisement of the mortgages in April, 1897, the rela-tors became the purchasers of the lands for an amount less than the sum due upon the mortgages. Until such sale said Hopkins remained the owner of the lands, subject to the said mortgages.

During the years 1895 and 1896, said Hopkins was also the owner of a large amount of personal property, located in the county aforesaid, subject to taxation ; and in those years taxes were levied by said county, against said Hopkins, upon said lands, and the personal property aforesaid. The taxes so assessed and levied were delin-quent and unpaid at the time of the foreclosure of the mortgages.

On or about October 26, 1897, the relators, as owners of the lands, caused to be paid to plaintiff in error, as county treasurer and ex-officio collector of taxes, the sum of $197.07 the same being the aggregate amount of de-linquent taxes, including penalty and interest charges, as-sessed and levied upon the said lands, while Hopkins con-tinued the owner thereof. The collector accepted the said sum, but although the same was demanded, refused, and continues to refuse to issue and deliver to relators a tax re-ceipt in full, and as for all taxes against said lands and legally chargeable thereto, claiming that all of the unpaid and delinquent personal tax assessed to the said Hopkins

constitute a lien upon the lands superior to the title of relators.

The foregoing facts are set out in the petition in this cause ; and a writ of mandamus is prayed for, commanding the collector to issue and deliver to relators a tax receipt in full of all legal demands against the lands for the years 1895 and 1896. A general demurrer to the petition was overruled, which ruling was duly excepted to, and the plaintiff in error elected to stand upon his demurrer, and refused to further plead. Thereupon, the court found the facts set forth in the petition to be true, and ordered that a peremptory mandamus issue.

The respondent assigns as error, (1) that the court erred in overruling the demurrer to the petition, and, (2) that the court erred in rendering judgment in favor of relators. The questions raised and discussed by counsel are two only, viz : First, Does the personal tax assessed against the mortgagor, Hopkins, constitute a lien upon the lands superior to the mortgages previously executed thereon, and in force when the taxes were so assessed and levied, and superior to the title of relators obtained at the foreclosure sale ? Second: Is mandamus a proper remedy ?

1. It is well settled that taxes are not a lien unless expressly made so by statute ; and, when liens are expressly created by statute, they are not to be enlarged by construction. Cooley on Taxation, 414; Bibbins v. Clark, 90 Ia., 230.

In a recent Colorado case it was said : " The fundamental rights of all governments to levy taxes is universally recognized. The power is broad enough to include authority to make the taxes a lien which shall override any other security or incumbrance, whether created anterior to the levy, or subsequent to the assessment. To ascertain whether it has been exercised in any given case, we must resort to the particular legislation respecting it in the jurisdiction wherein the lien is asserted." Gifford v. Callaway, 8 Colo. App., 359; 46 Pac., 626. The court in the same case say further, " Legislation directly charging the

realty with the lien is prerequisite to its existence ; without it, taxes are not thus collectible, either as against the owner or an incumbrancer.

Our statutes upon this subject are as follows :

"On the thirty-first day of December in each year, the unpaid taxes of that year shall become delinquent and shall draw interest at the rate of eight per cent per annum until paid, or collected by distress and sale, in addition to the penalty imposed by the preceding section, and taxes upon real property are hereby made a perpetual lien thereon, against all persons and corporations except the United States and this State, and taxes due from any person or corporation on personal property, shall be a lien on real estate owned by such person or corporation." (R. S., Sec. 1870.)

"All taxes levied upon personal property of any kind whatsoever, shall be and remain a perpetual lien upon the property so levied upon, until the whole of such tax is paid ; Provided, however, That in case of a transfer of property before payment of said tax levied thereon and after such levy, the tax thus levied shall be collected from the person or persons against whom the same are levied, if such person has real or personal property out of which payment can be enforced ; but if such person be not possessed of such real or personal property, then the payment thereof shall be enforced against the property thus taxed." (R. S., Sec. 1859.)

Although by the terms of Section 1870 taxes levied upon personal property are a lien upon the real estate owned by the person from whom such personal taxes are due, it is to be observed, that the lien thus provided for is not expressly made prior or superior to any other existing lien or incumbrance. A lien is created merely, without any attempt to fix its priority in respect to other liens. It would seem that had the legislature intended to impart to the lien of the personal tax upon land of the tax payer a priority over antecedent liens placed upon the property by the owner, in good faith, that intention would have been

expressed by plain and apt language.    Indeed, we think the duty to have done so to be clear.

But this matter has recently received the consideration of other courts, where the whole question has been ably and exhaustively discussed, and the conclusion reached that, under statutes very much like our own, and not at all dissimilar in principle, the lien of the personal tax upon the land of the owner of the personal property assessed, is not superior, but is inferior to antecedent incumbrances.    Gifford v. Callaway, supra; Bibbins v. Clark, 90 Ia., 230; Miller v. Anderson, 1 S. D., 539.

As our views are in accord with the decision in those cases, we deem any elaborate discussion on our part, at this time, unnecessary, and we will therefore content ourselves with brief references to the cases cited.

The statute of Iowa provides that "taxes due from any person upon personal property shall be a lien upon any real property owned by such person, or to which he may acquire title."    The supreme court of that State, when the question was first presented, held that the lien upon the land, thus created, was superior to any right acquired by the holders of a prior mortgage by virtue of a foreclosure and sale of the property.    Trust Co. v. Young, 81 Ia., 732.    The question again coming before the court in Bibbins v. Clark, 90 Ia., 230, a different conclusion was announced, and the former case overruled.    In the case last cited it was said, "To hold that a mere statutory creation of a lien upon real estate without more, is equivalent to, and to be construed as, creating a lien superior to existing liens thereon, is, as it seems to us, not only overriding all rules of construction, but it is inconsistent with our holding in the construction of other statutes where similar language is employed."    The court concludes its opinion by saying, "All that the statute provides as to personal tax being a lien upon real estate, is that it shall be a lien, and as such it must be held to come within the general rule that its priority is to be determined as of the time the lien attached."

The statute of South Dakota is practically the same as our own. In the case of Miller v. Anderson, 1 S. D., 539, the opinion exhaustively considers the precise question, and concludes that the statute " creates a lien in favor of the tax creditors upon such real estate, but that such lien, depending alone upon this statute, has no greater force than the statute expressly gives it, and the Legislature having manifested no intention of giving it peculiar or extraordinary force, or of defining its rank as a lien, such questions must be governed by the general statutes of the State upon the subject of liens."

The same construction was given the Colorado statute in the case of Gifford v. Callaway, *supra*, by the court of appeals of that State in an opinion of much force, and containing a learned review of the principles underlying the question. See also State v. Mayor, 42, N. J. L., 38 ; Gormley's App., 27 Pa. St., 49.

We are unable to find ground for a different construction of our statutes. We do not think that their effect is to fix the priority of such a tax lien as we are considering in this case. There is no reason, in our judgment, for holding that the statutes of this State impart to the personal tax lien a superior priority over a valid incumbrance taken in good faith, upon the land of the taxpayer, before the lien of the tax has taken effect.

The injurious consequences that would attend such a priority of the tax lien, as is contended for in the case at bar, must readily occur to the mind of any one, and is fully set out in the South Dakota and Colorado cases referred to. In many instances the security of a mortgage of lands would be rendered not only unsafe, but might be entirely destroyed, by events occurring subsequent to the execution of the mortgage which could not have been reasonably anticipated. Instead of being a reliable security, a real estate mortgage would become quite unreliable if a rule of priority should prevail, such as the collector insists on.

It follows that, upon the facts alleged in the petition,

the lands in question had ceased to be subject to the lien of the personal tax assessed. against Hopkins.   The payment of all the taxes assessed on account of the land discharged the lien of that tax, and the land stands free of all tax liens, so far as the record of this case discloses. No other taxes than those referred to in the petition are shown or claimed to exist which could operate as a lien.

2.   We are thus brought to a consideration of the question whether the relators are entitled to a mandamus compelling the execution and delivery to them of a receipt such as is prayed for and was ordered by the judgment appealed from.

This question has not been easy of solution.   We have regarded it as a rather difficult one, and requiring the application of some close distinctions.   But a careful study of our statutory provisions touching the functions and duty of tax collectors and the rights of taxpayers has enabled us, by the application of familiar rules affecting the remedy of mandamus, to arrive at a conclusion which appears to us to rest upon a sound basis.   Counsel for the collector contend that mandamus is not the proper remedy ; and in their brief have ably discussed the question, presenting some very plausible arguments.   We believe they have said all that can be said upon their side of the question ; but we find ourselves unable to agree with their views.   " Mandamus is a writ issued in the name of the State to an inferior tribunal, a corporation, board, or person commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."   (R. S., Sec. 4194.)

It is insisted in the first place that the law does not require the collector to issue a receipt in full for all taxes against the lands and legally chargeable thereto ; but, that the officer performs his entire duty by giving a receipt for the amount paid him.   That, in terms, his receipt does not release any tax lien ; but the receipt for the money upon payment being made, might operate to extinguish the lien.   It is argued that the personal tax of

Hopkins is a lien on the land, and the question relates only to the matter of priority, which the collector is without authority to determine.

Upon the foreclosure of the mortgages, the lien of the tax ceased to exist. That occurred prior to the payment by relators of the tax upon the lands and their demand of a receipt in full; and the question, therefore, is not one of priority, but whether the relators are entitled to a receipt stating the true result of their payment. In fact, such payment was in full for all taxes with which the land was then chargeable, except, possibly, the tax against it for 1897, and that tax, if any, is not involved in this case.

It is provided by Section 1098, Revised Statutes, that upon payment of any money to the county treasurer as collector of taxes, he shall issue his receipt therefor to the person paying the same, setting forth in such receipt all the matters prescribed in the preceding section, to be entered in his cash book. The preceding section requires to be entered in the cash book, among other things, every sum of money paid the collector by virtue of his office, the date of the payment, the name of the person paying the same, *and the account upon which the same was paid.* (R. S., Sec. 1097.)

By Section 1783, it is provided that "the collector shall receipt to each person or corporation for the amount of the tax received by him from them, specifying therein each kind of tax, and when the same was paid, and shall make the proper entries of such payment on the tax list."

It may be conceded that the statutes contain no specific or precise language requiring the collector to give a receipt in full when the taxpayer, by payment, adjusts all the taxes to which his property is subject. We think, however, that the language employed is sufficient to comprehend such a duty, when the nature of a tax receipt, the office of a tax collector, and the rights of a taxpayer, and the security to be afforded the latter in the enjoyment of his title to property are considered.

Under our system of taxation, the tax list or roll is made out in tabular form, and in alphabetical order as to names of taxpayers, having distinct columns for lands, and for town lots, and their value, and for the value of personal and other property, and for carrying out, in a column by itself, the amount of each different tax, and having one or more columns for delinquent taxes. (R. S., Sec. 1781.) Opposite the name of the owner or taxpayer, therefore, appears a description of his lands, their value, and the value of his personal property, together with the amount of the taxes assessed against him.

Payment of the proper sum to liquidate the tax upon the lands of the person assessed, even if the fact of such payment be noted upon the tax list, by the collector, will show a balance of taxes unpaid, apparently standing as a lien upon the lands described ; where, as in the case at bar, personal property is also assessed to the same person. That lien would probably be shown upon any abstract of the premises, passing through the hands of the treasurer for his certificate as to the freedom of the lands or otherwise from unpaid taxes. And this result would follow, in the absence of entry to the contrary upon the list, notwithstanding that a payment made of the particular tax upon the land had, in fact, discharged the entire tax lien upon it. So, in the absence of a receipt showing that fact, the owner of the land, paying the tax, would have no evidence in his possession of the actual payment of all the taxes to which the land was subject.

Now, a receipt for taxes is required by express provision of the statute, and that in more than one section. It is true, the receipt is not expressly constituted conclusive evidence of payment ; and, no doubt, it is not conclusive. But we think there is as little doubt that it would be held to be *prima facie* evidence. It has been so held in well-considered cases. Johnstone v. Scott, 11 Mich., 232 ; Cooley on Taxation, 452.

The object of a tax receipt is clearly not confined to

its operation as a possible check upon the collector. It manifestly comprehends, also, and perhaps more largely, protection to the taxpayer, by furnishing him convenient written evidence of payment. Johnstone v. Scott, *supra.* Nor, in our opinion, is the receipt required as a mere acknowledgment of the payment of a certain sum of money. It will be such an acknowledgment, of course, but the statute contemplates that it shall go further than that. In one section it is provided that the receipt shall state the account upon which the money is paid. In another, that the amount of tax and kind of tax shall be shown by it, and the proper entries shall be made upon the list. Considering the transaction, of which the receipt forms a part, its benefit as evidence in the hands of the taxpayer will be small indeed, if it does not show the payment of taxes ; and, in respect to lands, that the taxes to which they have been subject have been settled. That which the statute requires is, plainly, a tax receipt — a receipt showing the payment of taxes. The taxes upon the property owned by the relators have been entirely settled by their payment, and for the years involved, no tax of any kind or character remains chargeable to or a lien upon it. A receipt failing to exhibit that fact would not amount to a receipt showing the payment of taxes — such a receipt as, we think, is quite clearly intended by the statutes, taking into account such matters as have been already suggested. The receipt which the collector is probably willing to issue would be no more than a partial receipt only. Indeed, that is exactly what he contends. He insists that all the taxes for which the lands are holden have not been paid.

What would be the difference, if instead of the unpaid taxes standing against personal property, the collector erroneously claimed that the amount paid or tendered was not sufficient to satisfy the tax levy upon the land itself, and he should improperly demand an additional amount, either as a part of the original tax, or by way of penalty or interest, which the taxpayer contested and refused to

pay? We think there would be none, upon principle. In the case supposed, is it not plain that, upon payment of the just amount authorized by law, a receipt would be required showing full payment such as to evidence a release of the property from the tax? Now, it is true, the additional tax claimed was levied on account of other property, but it was assessed against the same party against whom the lands were assessed, and very properly so ; but they are claimed to be chargeable upon the lands, and therefore, on principle, they are held by the collector, under his claims, as a tax upon the lands, as much as if they had been originally assessed against them. His authority to sell the lands for the tax by the summary statutory method is the same in either case ; and the method provided therefor is not different.

It is urged that the collector is not authorized to release lands from tax liens. But the answer to that is, that he is continually doing that very thing by receiving the taxes levied upon the lands, and to which they are subject, acknowledging the payment thereof, and entering the facts upon the tax list. He does that in the great majority of cases without question, there arising no dispute between him and the taxpayer. Now, when a dispute does arise, and the contention of the collector is decided adversely to him, why should he not be compelled to do what he does in other cases without controversy?

The collector is the official representative of the public in the matter of the collection of taxes. See State, *ex rel.*, v. McGibbon, 5 Wyo., 82. He is empowered to enforce collection by resort to summary remedies, such as distraint of personal property, and sale of real property ; and upon sale he executes the papers evidencing the same. For the exercise of those remedies, the tax list and warrant are his sufficient authority. In his possession, and under his official control, are the records exhibiting, at all times, the standing of all tangible property — particularly so in the case of lands — in respect to taxes, and tax liens. He, and he alone (except when he acts by

deputy, and the acts of the deputy are his acts), may make the entries in the records, disclosing the payment of taxes, and the consequent discharge of the lien thereof. Upon him, and no other officer, devolves the duty of providing the taxpayer with the proper evidence of his payment, and its application.

No sound reason occurs to us why the collector, under the statutes, is not bound to accept all that is due upon certain lands, and issue a receipt showing that fact. Doubtless, a wise officer, in case of doubt, would protect himself by first obtaining the opinion of the county attorney, or securing other competent legal advice ; or suspend action until the matter had been determined in the courts.    But assume it to be finally decided that the taxpayer has paid or tendered all that the law requires, the obligation to give receipt exists.    And, unless there is some other adequate remedy in the ordinary course of the law, 'open to the taxpayer, the officer may be compelled, upon mandamus, to issue it.

We conceive these views to be sustained by the authorities.    Mandamus against the collector of taxes has been held proper to compel him to receive taxes without charge of interest, when, under the law, no interest was payable.    People v. O'Keefe, 90 N. Y., 419 ; and the writ was allowed compelling county supervisors to refund an illegal tax, although the illegality depended upon a showing of facts.    People v. Supervisors, 51 N. Y., 401. See Cooley on Taxation, 743.

Where a statute provided that the collector should give a receipt specifying the amount of the assessment, the amount of the tax, and a description of the property assessed, the supreme court of California said : "The taxpayer is not obliged to trust to parol evidence of his payment, which is liable to loss ; he is entitled to a record of the fact on the books of the collector, and to written evidence of the fact in his own possession.    Such evidence will show that the lien which follows the property, no matter in whose hands it may pass, has been

removed, and will furnish a ready answer to inquiries generally made as to the payment of the tax, when a transfer of the property is desired." And it was held that mandamus would lie to compel the issuance of the receipt, as it was a duty specially enjoined upon the collector. Perry v. Washburn, 20 Cal., 318.

Mandamus was upheld in a case very much like the one at bar. McNary v. Wrightman, 32 Ore., 573; 52 Pac., 510. Also, in Colorado, although the remedy was not discussed in the opinion. Gifford v. Callaway, *supra.* See also Law v. People, 84 Ill., 142 ; 25 Ency. L., 284.

It is, however, insisted that other remedies were open to the relators, and hence the extraordinary writ of mandamus ought not to issue. Our statute provides that the writ must not be issued where there is "a plain and adequate remedy in the ordinary course of the law." R. S., Sec. 4197.

To defeat the right to mandamus, where the duty sought to be performed is clear, it is not enough that other remedies are open to the relators wherein some sort of relief might be secured. The object of mandamus is to afford specific relief ; and it is not to be denied because of other remedies, unless the latter are in the language of the statute, "plain and adequate." Another remedy would not be adequate unless specific and suited to the particular circumstances of the case. High Ex. Leg. Rem., 17, 20; Merrill on Mandamus, 13, 51, 52.

If the remedies suggested by counsel are to be deemed adequate so as to bar mandamus in this case, they would operate to the same extent in the case of any taxpayer, even though he should pay all taxes appearing, in any way, upon the books; and, notwithstanding that the right to a receipt should be plain, the collector could refuse it, and insist that the taxpayer should resort to another remedy, thereby rendering entirely nugatory the statutory requirement for the issuance of a receipt.

As a sufficient answer to the suggestion that the priority of liens could have been determined in an action in

court for the foreclosure of the mortgages, it may be said, that the statute not only permits foreclosure by advertisement, but the relators were not mortgagees, and had they been, the remedy is not now open to them, as the mortgages have already been foreclosed.

Payment of the tax under protest to be followed by a suit to recover it back, suggested by counsel as a remedy which could be resorted to, we cannot regard as plain or adequate. The tax itself is not disputed. Its legality is not denied; but it is alleged, and so determined, not to be due from or chargeable to the lands in question. Moreover, the tax has not been paid, and the remedy is not now open. It would be, at the best, a rather circuitous method of obtaining relief. A taxpayer or land owner might be totally unable financially to pay the taxes of another person; and we do not think the mandamus asked for should be denied, because the taxpayer might have paid out a sum of money, and thereby acquired a cause of action for its recovery. We think the case cited by counsel, State, ex rel., v. Nelson, 41 Minn., 25; 4 L. R. A., 300, is to be distinguished from the case at bar; but if not, our judgment still is that the remedy suggested is not such an adequate one as to bar mandamus in this case.

But, it is urged that relators could bring an action to quiet title. If they are in possession, which fact does not appear by this record, such an action might probably be brought and a decree obtained quieting the title of relators as against the county and the collector. It is to be observed, however, that they would not thereby get the receipt, to which they are entitled; and therefore the remedy is neither specific nor adequate. A review of the numerous decisions upon the question would tend to illustrate our position; but we think such a review unnecessary.

For the reasons set out in this opinion, we find no error in the judgment, and it will be affirmed.

*Affirmed.*

Corn, J., and Knight, J., concur.