FIRST NAT. BANK OF CHICAGO v. CENTRAL COAL & COKE CO. et al.

No. 2066.

District Court, D. Wyoming.

May 16, 1933.

Joseph H. Galicich, Co. Atty., and Walter A. Muir, both of Rock Springs, Wyo., for claimants County Treasurer and Tax Collector and County Commissioners of Sweetwater County.

Wm. E. Mullen, of Cheyenne, Wyo., for J. M. Bernadin, receiver.

Burry, Johnstone, Peters & Dixon, of Chicago, Ill., and Matson & Swainson, of Cheyenne, Wyo., for Union Trust & Savings Bank, Michigan Trust Co., Fidelity Bank & Trust Co., and Melvin A. Traylor, trustees under first mortgage deed.

KENNEDY, District Judge.

The original proceeding to which the above is ancillary was instituted in the Western District of Missouri, being one involving a general receivership of the principal defendant, Central Coal & Coke Company. The ancillary proceeding in this court was begun on the 27th day of January, 1931, and the receiver was appointed upon the 2d day of February following, since which time he has been in possession and charge of the properties of the defendant within this jurisdiction. Subsequently and on May 8, 1931, the trustees under a first mortgage deed of trust dated June 1, 1922, and a supplementary instrument dated March 1, 1924, upon the property of the principal defendant, filed their bill in equity seeking to foreclose the aforesaid instruments which purport to secure outstanding bonds in an amount exceeding $2,000,000. Upon consent of all parties the two proceedings were consolidated, and the complainants in the foreclosure suit stipulated that the general receiver appointed by

this court should take charge of, conserve, and operate the properties for the use and benefit of the trustees under the mortgage deed, as well as the general creditors. Appropriate orders were issued permitting the receiver to continue the business of the defendant company, which was and is, in the main, the operation of coal mines and the production and sale of coal. The principal properties of the defendant company in this state are located in the county of Sweetwater, consisting of coal lands and the improvements thereon, certain personal property used in the operation of the mines, together with the coal which is produced from time to time. In addition to the real estate owned by the company, it has under lease certain other coal properties located in the same county and upon which there were certain improvements. When the defendant company passed into the hands of a receiver as aforesaid, certain taxes for the year 1930 had been assessed against the properties of the defendant and remained unpaid of a nature hereinafter to be considered. In 1931 taxes of a similar nature were assessed against said property, upon which two years' taxes a claim was filed in the receivership proceeding by the commissioners, treasurer, and tax collector of Sweetwater county in June, 1932. Objections having been filed to the claim and it not having been pressed for determination by either side, in March, 1933, another claim was filed covering the aforesaid taxes, as well as the taxes for the calendar year 1932. An answer in the way of objections to the latter claim was filed by the receiver and by the trustees under the first mortgage deed. Upon the issue thus raised a hearing was had and is now the matter before the court for determination.

It is the contention of the collector and his associates that the taxes so assessed, together with interest and penalties amounting to $41,828.10, are a first and preferred claim and lien upon the property owned by the defendant and the funds in the hands of the receiver accruing from the operation of the company's business. The receiver has appeared in the proceeding largely in the position of a stakeholder, but contending that all of the said taxes should not be recognized as a preferred claim. The trustees upon the first mortgage deed securing the outstanding bonds upon the property appear and by appropriate pleading contend that a certain portion of said taxes, only, are a first lien upon the properties and that the balance are subordinate to the lien under the first mortgage deed in which they are trustees.

It is apparently not in dispute among the parties to the proceeding that the taxes for which the claim is filed are correct in amount and would be payable by the principal defendant were it not in receivership and/or were the prior first mortgage deed not in existence. This hearing therefore resolves itself into a matter concerning the priorities in the payment of such taxes, with the exception of the item of interest and penalties which is disputed in toto. It becomes convenient to segregate the taxes into different classes for the purpose of discussing the points which are before the court for decision. For this purpose they will be divided into the following classes:

### Lands

| | | |
|---|---|---|
| Taxes assessed on lands in 1930.. | $ 18.47 | |
| Taxes assessed on lands in 1931.. | 21.40 | |
| Taxes assessed on lands in 1932.. | 14.93 | $ 54.80 |

### Improvements on Lands

| | | |
|---|---|---|
| Taxes assessed on improvements in 1930 | 1,040.80 | |
| Taxes assessed on improvements in 1931 | 1,146.36 | |
| Taxes assessed on improvements in 1932 | 1,037.32 | 3,224.48 |

### Personal Property

| | | |
|---|---|---|
| Taxes assessed on personal property in 1930 | 102.12 | |
| Taxes assessed on personal property in 1931 | 104.80 | |
| Taxes assessed on personal property in 1932 | 94.83 | 301.75 |

### Production

| | | |
|---|---|---|
| Taxes assessed on coal production in 1930 | 12,339.79 | |
| Taxes assessed on coal production in 1931 | 12,257.71 | |
| Taxes assessed on coal production in 1932 | 8,019.97 | 32,617.47 |

### Interest and Penalties

| | | |
|---|---|---|
| Interest on delinquent taxes on lands, improvements and personal 1930 | 329.26 | |
| Interest on delinquent taxes on production 1930 | 3,496.33 | |
| Interest on delinquent taxes on lands, improvements and personal 1931 | 169.60 | |
| Interest on delinquent taxes on production 1931 | 1,634.41 | 5,629.60 |
| Grand Total | | $41,828.10 |

Certain provisions of the state Constitution are pertinent to the inquiry before us. Article 15, §§ 1, 2, and 3, read as follows:

"Section 1. Assessment of lands. All lands and improvements thereon shall be listed for assessment, valued for taxation and assessed separately.

"Sec. 2. Assessment of coal lands. All coal lands in the state from which coal is not being mined shall be listed for assessment, valued for taxation and assessed according to value.

"Sec. 3. Mines—Taxation of. All mines and mining claims from which gold, silver and other precious metals, soda, saline, coal, mineral oil or other valuable deposit, is or may be produced shall be taxed in addition to the surface improvements, and in lieu of taxes on the lands, on the gross product thereof, as may be prescribed by law; provided, that the product of all mines shall be taxed in proportion to the value thereof."

Appropriate statutes have been enacted carrying into effect the foregoing constitutional provisions.

Section 115-2303 of the Wyoming Revised. Statutes 1931 provides: "On the tenth day of November and the tenth day of May of each year, all unpaid taxes which are due and payable, according to the provisions of § 115-2301 shall become delinquent and draw interest at the rate of fifteen per centum per annum until paid or collected by distress or sale, and taxes upon real estate are hereby made a perpetual lien thereon against all persons or corporations, except the United States and this state, and taxes due from any person or corporation on personal property shall be a lien on real estate owned by such person or corporation, subject, however, to all prior existing valid liens; provided, however, that no property shall be sold for taxes, except in the manner now provided by the laws of the state of Wyoming."

■■ This statute provides that taxes on personal property shall be a lien on real estate owned by the person taxed, subject to all prior existing liens, and was evidently passed to conform to decisions of the state Supreme Court holding that a tax upon personal property was a lien upon the real estate of the person assessed only as being subordinate and inferior to an antecedent mortgage upon such real estate. Lobban, County Treasurer, v. State ex rel. Carpenter, 9 Wyo. 377, 64 P. 82. The principle was again affirmed subsequent to the enactment of the statute in Wakeman v. Board of Commissioners, 40 Wyo. 53, 274 P. 12. While the proofs do not particularly disclose that the improvements upon which the taxes have been assessed are located upon the lands owned by the defendant company, we may assume that they were so located and therefore are, as are all improvements, a part of the realty. Whatever improvements are located upon leased lands, if they be of a temporary nature, it may be assumed, are assessed against the defendant as personal property. In the light of the foregoing constitutional and statutory provisions, it is quite apparent that the taxes assessed upon lands and improvements as hereinbefore set forth are taxes upon the specific property covered by the first mortgage deed and are therefore a lien upon said property superior to that of said mortgage and should be so allowed. It likewise follows that under the Wyoming statute, so called, taxes on personal property are not a lien superior to that of the first mortgage and should be held as junior thereto unless there should be some other rule indulged growing out of the nature of the particular proceeding here involved, to be noticed later.

■ The next item for consideration is that of the so-called production tax, which is by far the most perplexing in the present inquiry. The statutory provision purporting to carry into effect section 3 of article 15 of the state Constitution, concerning a tax on the gross products of mines, is found in sections 115-601 to 115-606 of the Wyoming Revised Statutes 1931. Section 115-601 reads as follows: "Return for assessment. The gross product of all mines and mining claims from which gold, silver and other precious metals, soda, saline, coal, petroleum, or other crude or mineral oil, or natural gas, or other valuable deposit is, or may hereafter be produced, while the same are being worked or operated, but not while the same are simply in the course of development, shall be returned by the owner, owners, lessee, or operator thereof for assessment for taxation, assessed for taxation, and taxed in the manner provided for in this article and such tax shall be in addition to any tax which may be assessed upon the surface improvements of such mines or mining claims, and in lieu of taxes upon the land of such claims while the same are being worked or operated."

Section 115-602 provides that the owner, lessee, or operator of mines producing certain specified minerals (including coal) shall make a return each year to the state board of equalization by a sworn assessment schedule setting forth the gross product for the immediately preceding calendar year, and in the succeeding sections it is required that said board shall equalize and fix the valuation of such property for the current year and certify the same to the assessors of the several counties in which the property is located which shall by them be entered and assessed, providing a penalty for false swearing of any one making the return and fixing a penalty upon any owner, lessee, or operator who fails to return the assessment schedule.

It is obvious from the foregoing that the tax for the year in which the assessment is

made is based upon the output or production of the preceding year, which presumably at the time of making the assessment has been disposed of by the owner, lessee, or operator. The question arises, under the Constitution and statutes referred to, as to what the nature of the tax upon that production may be. As in the case at bar, if it is a tax upon real estate it would be superior to the mortgage lien, but if it is a tax upon personal property, it would be inferior and subordinate to such lien. The solution of this problem is not entirely free from difficulty, in that it has not been definitely decided by the Supreme Court of Wyoming, which decision if in existence, I take it, would be binding upon this court as fixing a rule of property to be followed in the interpretation of the Constitution and statutes of the state where the property in question is located.

In Miller v. Buck Creek Oil Co., 38 Wyo. 505, 269 P. 43, 73 A. L. R. 821, the court had under consideration a controversy as to who should pay the production tax upon oil produced as coming within the purview of sections 115-601 to 115-606 of the statutes, and there it was determined that, in the absence of agreement, the lessor or royalty owner and the lessee should pay the tax in proportion to their respective interests in the production. The question as to whether or not the tax was one on real or personal property was not specifically ruled as perhaps not being necessary to the determination of the point there involved, and yet it is mentioned in the discussion by Justice Kimball at page 508 of 38 Wyo., 269 P. 43, 44, 73 A. L. R. 821, in the following language:

"The tax is evidently a property tax rather than a license, privilege or occupation tax. In the absence of an agreement in regard to the payment of taxes on property, it will be assumed that the parties intended that the owner of the property should pay them. Where a lease is silent on the subject, the obligation to pay taxes would ordinarily rest upon the lessor; but this general rule yields to a contrary presumption, where overbalancing considerations lead to that result. Pittsfield & N. A. R. Corp. v. Boston & A. R. Co., 260 Mass. 390, 157 N. E. 611. Thus, a lessee who is the virtual owner of the property may be considered the owner for the purposes of taxation. Norfolk v. J. W. Perry Co., 108 Va. 28, 61 S. E. 867, 35 L. R. A. (N. S.) 167, 128 Am. St. Rep. 940.

"It is perhaps doubtful whether the tax in question ought to be considered a tax upon the mining claim or upon the oil produced therefrom. While it is based upon the value of the oil, it is declared to be in lieu of taxes on the mining claim. We are informed that it is the practice of the state board of equalization to assess the entire tax against the operating and producing company."

Previously, in the case of State v. Snyder, 29 Wyo. 163, 212 P. 758, the court had for determination the question as to whether the proceeds from royalty oils taken from state lands belonged to the perpetual school fund as arising from the sale of lands required by constitutional provision there to be invested, or to a fund created from the income of state lands to be immediately used and expended for the support of schools. It was there held that the oil being a part of the corpus of the land, the proceeds from the sale should belong to the perpetual school fund of the state. In this decision announced by Justice Blume, at page 197 of 29 Wyo., 212 P. 758, 766, however, we have the following significant statement: "The final disposition of the oil or gas, or sale, if we please to call it so, does not take place—is not in any event consummated—until after the oil is taken from the earth, has become severed from the realty, and has become personal property."

By the foregoing I am inclined to the belief that the Supreme Court leans toward the doctrine announced by so many other courts, that mineral when severed from the land becomes personal property and is taxable as such. At least, in the Buck Creek Case, the Wyoming court has considered the production tax statute and has found that a portion of the tax should be paid by the lessee of the property, which, it seems to me, is only consistent with the theory that the tax is upon the product after it becomes severed from the land and holds the status of personal property.

If the decision of the Supreme Court cannot be interpreted as deciding the point here involved, it remains to investigate the authorities laid down by the federal courts and the highest courts of other states in the endeavor to find a solution.

The United States Supreme Court, in Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313, had under consideration what I consider to be a similar statute concerning the assessment for purposes of taxation of "ores, tailings and mineral bearing materials of whatever nature" under the laws of the state of Nevada, in which we find the following significant language by Mr. Justice Miller, at page 765 of 94 U. S., 24 L. Ed. 313:

"From the first section of the statute we

ascertain what it is that is taxed; namely, all the ores, tailings, or mineral-bearing material of whatever character, after deducting the actual cost of extracting said ores as mineral from the mines, and other expenses, such as transporting them to the place of reduction, etc.

"From this it is clear that it is the ore after it has been separated from the bed in which it is found, and its proceeds and products, which are taxed, and not the ore or mineral in the earth. Indeed, this latter idea is not advanced by any one, and it would be preposterous.

"As we construe the statutes of the United States and the recognized rule of the government on this subject, the moment this ore becomes detached from the soil in which it is embedded it becomes personal property, the ownership of which is in the man whose labor, capital, and skill has discovered and developed the mine and extracted the ore or other mineral product. It is then free from any lien, claim, or title of the United States, and is rightfully subject to taxation by the State as any other personal property." .

The Supreme Court of our sister state to the north, in Northern Pacific Ry. Co. v. Musselshell County, 54 Mont. 96, 169 P. 53, had under consideration a constitutional provision concerning taxation in which it was provided that the annual net proceeds of all mines and mining claims should be taxed as provided by law. In analyzing the reasoning in the constitutional debates concerning this section, the court on page 56 of 169 P., 54 Mont. 96, has this to say: "While the discussion had special reference to land acquired under the laws relating to mineral lands, it disclosed a purpose to devise a method by which all property could be made to bear its just burden under an ascertainable value, as well as a definite purpose to avoid leaving the ascertainment of the value of any of it to speculation which would vary in result as widely as the individual opinions or judgments of different assessors, and thus result in valuations in no sense uniform as to that particular class of property. The language of the section is not expressed in the most apt and appropriate terms; but we are of the opinion that the expression 'all mines,' as used in the last clause of it, was intended to apply to all mineral deposits, and to put them in the category of personal property; the margin over and above the cost of extraction only to be taxed at a value to be ascertained by visual inspection or mathematical calculation."

In Carpenter v. Shaw, 134 Okl. 29, 272 P. 393, the Supreme Court of Oklahoma has construed a statute in that state requiring persons engaged in the production of minerals, including oil, to file with the state auditor, among other things, the gross amount of the mineral produced and the actual cash value thereof at the place of production and to pay a tax thereon, as set forth in the syllabus by the court as follows: "Oil when discovered and reduced to possession by being detached from the soil in which it is embedded becomes and is personal property, and is subject to state gross production tax."

It is difficult to adopt any theory which will withstand the assault of logic, that mineral when severed from the earth is other than personal property, unless it has been specifically declared otherwise by constitutional provision or by legislative enactment.

Counsel for claimant strenuously urge that there is some peculiar merit in the use of the words "in lieu of" as contained in the Wyoming Constitution and statutes, citing McHenry v. Alford, 168 U. S. 651, 18 S. Ct. 242, 42 L. Ed. 614, as authority, in which case on page 671 of the opinion in 168 U. S., 18 S. Ct. 242, 250, 42 L. Ed. 614, the following language is used: " * * *  and when it is said, as it is in this act, that the tax collected by this method shall be in lieu of all other taxes whatever, it would seem that it might be claimed with great plausibility that a tax levied under such circumstances and by such methods was not in reality a tax upon the gross earnings, but was a tax upon the lands and other property of the company, and that the method adopted of arriving at the sum which the company should pay as taxes upon its property was by taking a percentage of its gross earnings."

Immediately following the above quotation which is found in counsel's brief, I find this language: "We do not think it necessary, however, to decide this question, because we are of opinion that by the act of 1889 the legislature proffered the company a compromise as to the taxes claimed to be due, and the company accepted the same."

As I interpret the language of the decision relied upon, it is at most obiter, and not the announcement of any underlying rule used as the basis for the decision of that case.

Counsel for claimant also urge that in any event the rule should be adopted that taxes are to be allowed and paid in receiverships as a part of the expenses of administration. Cases in quantity are cited to this effect, but in analyzing them they seem to be under

conditions where no statutes are in force and effect with respect to liens that are declared to be superior, and they are therefore not persuasive in considering the rights of parties here under the laws of Wyoming.

The foregoing discussion would seem to dispose of the so-called tax on production involved in the case at bar, but for the following circumstance hereinbefore mentioned: Near the beginning of the year 1931 the receiver took over the properties of the defendant and, under an order of the court and with the consent of the trustees under the first mortgage deed, became authorized and proceeded to conduct the business of the defendant, which was and is the mining and production of coal and its properties in the state. The taxes claimed upon the production for the years 1930 and 1931 were based upon the production for the years 1929 and 1930, respectively, and was by the company itself. However, beginning with the year 1931 the receiver himself became an operator and producer of coal the proceeds of which went to maintain the receivership and protect the lien of the first mortgage as well as the general creditors. The receiver therefore as an operator and producer became amenable in 1932 to an assessment return and a production tax upon the output from the mines for the year 1931, and should be required as any operator to comply with the statute. Such a rule would likewise be in accordance with justice and equity, in that the state should not be required to suffer the loss of its taxes merely because the operator is a receiver, nor should the mortgage trustees be entitled to this peculiar benefit as against the general creditors, inasmuch as the property is being operated for their mutual good. This method of allocation places the production tax for 1932 and for the succeeding years for which the property is in operation by the receiver in a different class than the production taxes for the years 1930 and 1931 and requires that such tax on the operating output during the receivership be prior and superior to the lien of the trustees under the mortgage.

It remains to consider the item of interest and penalties. It is apparent from the facts disclosed by the record in this case that interest and any penalties accrued after the property passed into the hands of the receiver. I am of the opinion that the better rule is that interest and penalties are not allowable in receivership proceedings. The reason is fairly stated in Thomas v. Western Car Company, 149 U. S. 95, 13 S. Ct. 824, 37 L. Ed. 663, in the language of Mr. Justice Shiras

speaking for the court at page 116 of 149 U. S., 13 S. Ct. 824, 833, 37 L. Ed. 663: "We cannot agree that a penalty in the name of interest should be inflicted upon the owners of the mortgage lien for resisting claims which we have disallowed. As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate. Williams v. [President, etc., of American] Bank, 4 Metc. (Mass.) 317, 323; Thomas v. Minot, 10 Gray [Mass.] 263. We see no reason in departing from this rule in a case like the present, where such a claim would be paid out of moneys that fall far short of paying the mortgage debt."

This eliminates from further consideration the item of interest as having any place in the distribution of funds by the receiver or as being a lien upon any property in his hands.

Recapitulating upon the foregoing items which have been considered, it will be the conclusion of the court that the taxes assessed upon lands in the amount of $54.80 and on improvements thereon in the amount of $3,224.48 are a first lien upon the property superior to the lien of the first mortgage, and together with the tax on coal production assessed for the year 1932 based upon the production of coal for the year 1931, amounting to $8,019.97, are first payable out of the funds in the hands of the receiver. These three items make a total of $11,299.25, which the receiver by appropriate order will be directed to pay out of the funds in his hands accruing from the operation or income of the properties in the state of Wyoming. The tax assessed on personal property in the amount of $301.75, and the tax assessed in 1930 on coal production amounting to $12,339.79, and the tax assessed in 1931 on coal production amounting to $12,257.71, or a total of $24,899.25, may be allowed as a claim against the receivership inferior and secondary only to the lien of the first mortgage but payable in advance of all general claims against the defendant company. The claim for interest and penalties in the amount of $5,629.60 will be disallowed altogether. All of the foregoing claims, however, are secondary to the legitimate court costs and expenses of the receivership in this jurisdiction.

Findings, conclusions, and an order and decree, reserving proper exceptions to the parties, may be prepared and submitted by the attorneys for the receiver and trustees, in

collaboration with the attorneys for the claimant, on or before May 27, 1933, and an order of extention will be entered by the clerk accordingly.